EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Blanca Iris Guzmán Cotto y otros<br>    Demandantes-Peticionarios<br><br>        v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br>    Demandados-Recurridos | Certiorari<br><br>2002 TSPR 59<br><br>156 DPR _____ |

Número del Caso: AC-2000-76

Fecha: 7/mayo/2002

Tribunal de Circuito de Apelaciones:
                        Circuito Regional II

Juez Ponente:
                        Hon. Andrés E. Salas Soler

Abogados de la Parte Peticionaria:
                        Lcdo. Nicolás Nogueras, Jr.
                        Lcdo. Alberto Rivera Claudio

Abogados de la Parte Recurrida:
                        Lcdo. Manuel A. Rodríguez Suárez
                        Lcdo. Jesús R. Rabell Méndez
                        Lcdo. Carlos J. Morales Bauzá
                        Lcdo. Nerylu Figueroa Estasie

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Blanca Iris Guzmán Cotto
y otros

    Demandantes-peticionarios

      v.                     AC-2000-76     APELACION

Estado Libre Asociado de
Puerto Rico y otros

    Demandados-recurridos



Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a 7 de mayo de 2002


Los demandantes, aquí peticionarios, Miguel A. Morales Rivera y Blanca Iris Guzmán Cotto, Josefina Ruiz Montolio, Aida Clavante Rosa, Amarilys Cotto Rivera y María L. Maysonet, son todos empleados unionados, asignados a la Oficina Regional de Bayamón, de la Administración de Compensaciones por Accidentes Automovilísticos, en lo sucesivo, A.C.A.A.

Estos pertenecen a la matrícula y son miembros activos de la Unión Independiente de Empleados de la A.C.A.A., organización sindical autorizada a representar a los empleados incluidos en la unidad de contratación apropiada, ello en relación a las

materias cubiertas por el convenio colectivo A.C.A.A./U.I.E.A.C.A.A, suscrito entre ambas partes.

Durante el año 1996 se comenzó a realizar una serie de trabajos de remodelación y construcción en las facilidades de la referida oficina regional de la A.C.A.A. Tales remodelaciones se llevaron a cabo de forma "abierta", es decir, mientras los empleados se encontraban presentes en dicha localidad ejerciendo sus labores de empleo. Los empleados demandantes comenzaron, alegadamente, a sufrir ciertos padecimientos respiratorios, ello supuestamente como consecuencia del ambiente y condiciones insalubres a las que estaban siendo sometidos y bajo las cuales venían obligados a trabajar a la vez que se realizaban las mencionadas tareas de construcción y remodelación.

A raíz de tales padecimientos de salud, todos éstos acudieron y se reportaron a la Corporación del Fondo del Seguro del Estado, en lo sucesivo, Fondo. Una vez sometidas sus respectivas reclamaciones, los médicos de la referida Corporación pública le diagnosticaron varias enfermedades ocupacionales acaecidas por razón del ambiente nocivo de trabajo al que estaban siendo expuestos. Los demandantes recibieron el tratamiento adecuado para contrarrestar los trastornos respiratorios padecidos, relativos éstos a la laringe, garganta, bronquios y alvéolos.[1] Específicamente, el

---

[1] Entre tales condiciones respiratorias, se trataron el asma, amigdalitis, fatiga, alergias nasales, rinofaringitis aguda y bronquitis.

diagnóstico médico fue el de "malas condiciones de salud relacionadas al ambiente de trabajo".

Así las cosas, y a petición de los empleados peticionarios y del sindicato que los representaba, varios inspectores de la Oficina de Seguridad y Salud en el Trabajo[2] acudieron a la referida Oficina Regional con el propósito de realizar pruebas y estudios científicos sobre la atmósfera del edificio donde la misma está ubicada. Dicha oficina canaliza las querellas que se presentan ante el Departamento del Trabajo y Recursos Humanos por incumplimiento con las normas de seguridad y salud promulgadas por la agencia.[3] Luego de llevada a cabo la correspondiente inspección, el mencionado organismo administrativo preparó un informe donde se detalló la presencia, en las facilidades de la estructura donde está localizada la referida oficina regional, de condiciones bacterianas, de microorganismos nocivos a la salud y de hongos

---

Además, recibieron el tratamiento correspondiente a ciertos problemas de migraña, audición, pérdida de balance, problemas visuales, alergias de piel, alergias nasales, insomnio, y depresión que padecieron.

[2] Oficina adscrita al Departamento del Trabajo y Recursos Humanos, bajo la supervisión del Secretario de dicha dependencia gubernamental.

[3] Véase 29 L.P.R.A. sec. 361p(c)(1), en cuanto a la solicitud de inspección que pueden solicitar cualesquiera empleados, mediante notificación al Secretario del Trabajo y Recursos Humanos, de creer que existe(n) alguna(s) violación(es) a las normas de seguridad y salud ocupacional en su lugar de trabajo y que pudiera causarles daño.

[3] Cabe destacar que esta Oficina es una especie de contraparte estatal o el organismo equivalente a lo que es la Occupational Safety and Health Administration (OSHA) adscrita al Departamento del Trabajo federal.

que afectan el sistema respiratorio. Luego de ello, la Oficina de Seguridad y Salud determinó que el edificio en cuestión era uno "enfermo", por lo que se tenían que tomar medidas correctivas para remediar los problemas ambientales detectados.[4]

Precisamente, ante la inacción del Director de la A.C.A.A., y de los supervisores a cargo de la administración de la antes mencionada oficina regional, y a la luz de los hallazgos reportados por la Oficina de Seguridad y Salud en el Trabajo, los demandantes, por sí y en representación de sus respectivas sociedades legales de gananciales, radicaron una demanda de daños y perjuicios ante la Sala Superior de Bayamón del Tribunal de Primera Instancia contra los aquí recurridos, a saber: la A.C.A.A.; el Estado Libre Asociado de Puerto Rico, por los daños ocasionados por la culpa y negligencia de los oficiales y directores de la referida dependencia gubernamental; el Lcdo. Práxedes Pedraza, como Director Ejecutivo y Administrador de la A.C.A.A., al ser la persona responsable de velar porque se establezcan y cumplan, en la dependencia gubernamental a su cargo, las directrices estatales y federales de salud y seguridad ocupacional promulgadas por las agencias correspondientes; el Sr. Rafael Rivera, Director y Administrador Regional, Región de Bayamón,

---

[4] En el expediente de autos no hay constancia ni copia de lo transcrito en el referido informe. Hacemos referencia al contenido del mismo a la luz de los planteamientos que, sobre éste, esgrimieron los peticionarios ante el foro de instancia. Dicho foro consideró y tuvo ante sí dicho documento.

A.C.A.A., por ser la persona directamente encargada de poner en vigor, en la referida oficina regional, las regulaciones estatales y federales relativas a la seguridad ocupacional de los empleados bajo su supervisión inmediata.[5]

En su demanda, específicamente, alegaron los peticionarios que la negligencia crasa de los codemandados, en el manejo e implantación de las directrices sobre seguridad ocupacional en el trabajo, causó el desarrollo y complicación de las enfermedades respiratorias, físicas y emocionales que han padecido y, alegadamente, seguirán padeciendo de seguir expuestos a las condiciones nocivas a la salud en un edificio declarado "enfermo". Adujeron, además, que las mencionadas condiciones insalubres continuaron existiendo sin que ningún oficial o administrador de la oficina regional hubiera llevado a cabo gestión alguna o tomado medidas correctivas para, al menos, tratar de mitigar o eliminar los problemas ambientales allí presentes. Sostuvieron que tal negligencia crasa creó un

---

[5] Se incluyó además a un tal "Señor C", nombre ficticio utilizado para designar al dueño y arrendador del edificio donde ubica la mencionada oficina, al éste arrendar un edificio "enfermo" y a las compañías aseguradoras "D,E, y F" que hubieran emitido pólizas de seguro sobre el inmueble en cuestión.

En cuanto a dicha reclamación, debemos destacar que, según se desprende del expediente de autos, nunca se llevaron a cabo los trámites correspondientes para sustituir los referidos nombres ficticios por los verdaderos, como tampoco se trajeron como parte a quienes se supone fuesen, en realidad, tales personas. Regla 15.4 de Procedimiento Civil, 32 L.P.R.A. Ap.III, R. 15.4.

El foro primario nada ha dispuesto en cuanto a la responsabilidad que éstos tuvieran o hayan podido tener para con la parte demandante.

elemento de responsabilidad civil extracontractual vinculante, que hacía responsable, de manera solidaria, a todos los demandados por los daños físicos y emocionales que han sufrido.[6] A tales efectos, reclamaron indemnización por las enfermedades ocupacionales y lesiones sufridas.[7]

Finalmente, alegaron que los demandados actuaron de forma maliciosa al discriminar contra todos y cada uno de los peticionarios por haber ejercido su derecho a querellarse ante las autoridades pertinentes por las prácticas de aquellos de mantener un ambiente de trabajo nocivo a la salud humana. Específicamente adujeron que fueron objeto de prácticas discriminatorias en clara violación a la política pública

---

[6]    Dentro del concepto de los daños reclamados por los peticionarios se encuentra además el del menoscabo para generar ingresos debido a los padecimientos físicos y emocionales sufridos a causa de la negligencia patronal, en conjunto con daños causados por el deterioro de sus vidas sociales y familiares.

[7]    Como indemnización total individual en concepto de daños físicos, emocionales, entre otros previamente mencionados y alegados en las distintas causas de acción, sufridos tanto por ella, como por su esposo, Sr. José Juan Ortiz, y la sociedad legal de gananciales compuesta por ambos, la Sra. Blanca I. Guzmán Cotto reclama la cantidad aproximada de cuatro millones doscientos mil dólares($4,200,000.00) más daños punitivos por una suma no menor de un millón de dólares ($1,000,000.00).

De igual manera reclama la Sra. Josefina Ruiz Montolio, la suma total de tres millones novecientos mil dólares ($3,900,000.00), más daños punitivos por una cantidad no menor de un millón de dólares ($1,000,000.00).

Por su parte, y por iguales conceptos, las señoras Aida Clavante Rosa y Amarilys Cotto Rivera y el señor Miguel A. Morales Rivera reclaman por separado la misma partida de tres millones novecientos mil dólares ($3,900,000.00) que la Sra. Josefina Ruiz Montolio, más la misma suma en carácter de daños punitivos.

plasmada en la Ley Núm. 115 de 20 de septiembre de 1991, 29 L.P.R.A. sec. 194 *et seq.*, mejor conocida como la Ley de Represalias.[8]

El Estado Libre Asociado compareció, vía solicitud de desestimación, alegando incumplimiento de la parte demandante con el requisito de  notificación de la reclamación al Secretario de Justicia; esto, dentro de los noventa (90) días siguientes a que dicha parte tuvo conocimiento de los daños que reclama, según ello se ordena por la Ley de Pleitos contra el Estado[9]. Cabe señalar que el foro de instancia accedió a tal pedido y desestimó, mediante orden, la referida reclamación contra el E.L.A., <u>determinación judicial que advino final y firme</u>.

La codemandada A.C.A.A., como los codemandados, Lcdo. Práxedes Pedraza Santiago, y el Sr. Rafael Rivera, solicitaron la desestimación de la demanda al amparo de la Regla 10.2, Inciso (5), de Procedimiento Civil [10], aduciendo que la reclamación de los demandantes no justificaba la concesión de

---

[8]  Resulta pertinente reseñar que los demandantes no adujeron hecho alguno en apoyo de tal reclamación que tienda a establecer el hecho de que alguna práctica discriminatoria haya tenido lugar en su contra.

[9]   Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. secs. 3077-3092a , según enmendada por la Ley Núm. 24 de junio de 1966, 32 L.P.R.A. 3077a , para añadir el requisito de notificación al Secretario de Justicia de toda reclamación en daños contra el Estado, notificación que deberá presentarse ante el Secretario dentro de los noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños que reclama. El inciso (e) de tal estatuto  dispone a su vez la prohibición de toda acción judicial de tal tipo contra el Estado si no se hubiere cumplido con el mencionado requisito.

remedio alguno por su parte. En apoyo de la misma, alegaron, en primer lugar, que los demandantes carecían de una causa de acción válida en derecho pues éstos se reportaron y recibieron tratamiento adecuado en el Fondo por las enfermedades ocupacionales que le fueron allí diagnosticadas, hecho que a su vez, hacía a los codemandados acreedores a la defensa de la inmunidad patronal dispuesta en la Ley de Compensaciones por Accidentes en el Trabajo[11]. En segundo término, sostuvieron que los demandantes tenían el deber de agotar remedios administrativos al amparo de la Ley de Seguridad y Salud en el Trabajo, 29 L.P.R.A. sec. 361 *et seq.*, previo a radicar su reclamación ante el foro judicial. Por último, adujeron que los demandantes, al ser empleados unionados, tenían que haber seguido el procedimiento para la solución de agravios y disputas dispuesto en el convenio colectivo del cual formaban parte; agotando así los remedios contractuales ordenados por dicho acuerdo obrero-patronal.

En respuesta a esta solicitud de desestimación, los demandantes comparecieron en oposición a la misma, alegando que  la dejadez y desidia de éstos últimos en el trámite y cumplimiento con los parámetros de seguridad y salud ocupacionales en el trabajo constituía un patrón intencional de conducta que, excluía su reclamación de la aplicación del remedio exclusivo de la inmunidad. Cónsono con lo anterior,

---

[10]    32 L.P.R.A. Ap.III, R.10.2(5).

[11]    Véase Artículo 20 de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 21.

adujeron  que tanto al Director Ejecutivo de la A.C.A.A., como al Supervisor Regional, en su carácter de administrador y supervisor respectivamente, no les cobijaba la referida defensa. Sostuvieron además que aun en el supuesto de que se determinase que a la A.C.A.A., en calidad de patrono de los demandantes, se le concediera inmunidad patronal, tal defensa no le era extensiva a los codemandados por ser éstos "terceros responsables" de los daños sufridos por ellos. Así pues, alegaron que tanto el Sr. Pedraza Santiago como el Sr. Rivera tenían el deber de responder personalmente por sus actos culposos.[12]

En cuanto al planteamiento sobre agotamiento de remedios administrativos, señalaron los demandantes que la existencia de una reclamación en daños por las enfermedades y lesiones sufridas, y otra por agravio al derecho a la protección de la salud en el trabajo, obviaba cualquier trámite administrativo provisto por la Ley de Seguridad y Salud. En apoyo de tal contención, alegaron, en síntesis, que el referido foro administrativo no ostenta facultad alguna para conceder el remedio de daños y perjuicios que procuraban obtener ante el foro judicial, por lo que no tenían que cumplir con un trámite ante la agencia que no cubría su reclamación de daños.

En respuesta al argumento relativo al mecanismo de solución de disputas y agravios dispuesto en el convenio colectivo, sostuvieron los demandantes que tal acuerdo solo hacía extensivo su procedimiento de querellas a aquellas

---

[12]    Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

referentes a la interpretación y administración del mismo y no a la violación de las leyes protectoras del trabajo, entre éstas incluida la Ley de Seguridad y Salud.

Luego de varios trámites procesales, el tribunal de instancia celebró una vista con el fin de atender la referida moción de desestimación y la oposición a la misma.[13] Evaluados los reclamos previamente mencionados, dicho foro emitió sentencia final desestimatoria de la totalidad de la misma. Sostuvo dicho tribunal que aún cuando el patrono aquí recurrido actuó negligentemente al no proveer un lugar de empleo libre de contaminantes dañinos, no podía concluirse que tales actuaciones configuraran un patrón de conducta intencional. En vista de lo anterior determinó que tanto la A.C.A.A., como los codemandados Pedraza y Rivera[14], estaban cobijados por el manto de la inmunidad patronal. De conformidad con tal decisión, concluyó que los demandantes carecían de una causa de acción válida ante los tribunales, por lo que el foro con jurisdicción para atender sus reclamaciones lo era el Fondo

---

[13]  Se le presentó a la juez que presidió la vista, una certificación de la Oficina de Seguridad y Salud sobre el estado procesal de las querellas e investigaciones realizadas por dicha oficina en relación a la reclamación de los demandantes. Se le presentó además copia del convenio colectivo, con especial referencia al trámite de querellas, así como una certificación del Fondo en cuanto al estado de las reclamaciones de los empleados ante dicha dependencia gubernamental.

Nos no nos encontramos en posición de evaluar tales documentos, pues no se han anejado al expediente que obra ante este Tribunal.

[14]  En su carácter de administrador y supervisor, respectivamente.

del Seguro del Estado. Por otra parte, determinó el foro primario que toda reclamación en cuanto a la violación de las normas de seguridad y salud ocupacionales y, en consecuencia, en cuanto al reclamo por daños sufridos implícito en la misma, tendría que ventilarse a través del procedimiento establecido por la Ley de Seguridad y Salud en el Trabajo. Nada dispuso dicho foro en cuanto a la reclamación de los demandantes referente al discrimen por represalias.

Inconforme con tal determinación del Tribunal de Primera Instancia, los empleados demandantes acudieron, vía oportuno recurso de apelación, ante el Tribunal de Circuito de Apelaciones. En su escrito de apelación, discutieron los mismos planteamientos esgrimidos en su oposición a la moción de desestimación presentada por los demandados ante instancia. Cumplimentados los trámites apelativos pertinentes, el tribunal apelativo intermedio confirmó el dictamen emitido por el foro primario. En apoyo de tal determinación, utilizó como base los mismos fundamentos sostenidos por instancia en la sentencia desestimando la reclamación de los demandantes. Destacó dicho tribunal que la Oficina de Seguridad y Salud en el Trabajo, era el organismo con facultad para canalizar toda querella por incumplimiento con las normas de seguridad y salud ocupacionales, reglas, reglamentos y órdenes promulgadas por la agencia, por lo que los empleados demandantes debieron presentar sus querellas ante esa Oficina previo a dar inicio a su reclamación por las enfermedades ocupacionales sufridas ante el foro judicial.

Por no estar de acuerdo con el dictamen al que llegó el tribunal apelativo, la parte demandante acudió ante este Tribunal. Los peticionarios alegan que procede revocar la sentencia emitida por el foro intermedio, confirmatoria ésta a su vez de la emitida por el tribunal de instancia, debido a que dicho foro incidió:

> "...al desestimar en su totalidad la demanda contra todos los demandados a base de que ésta no expone una reclamación que justifica la concesión de un remedio y al resolver que la inmunidad patronal cobija a la ACAA y sus oficiales y funcionarios bajo la Ley de Compensaciones por Accidentes en el Trabajo, y al resolver que los demandantes debieron agotar los remedios administrativos bajo la Ley de Seguridad y Salud en el Trabajo y haber utilizado el Convenio Colectivo entre la ACAA y la Unión."

Acogido el recurso radicado, como uno de certiorari, expedimos el mismo. Contando con la comparecencia de ambas partes, y estando en posición de resolver el mismo, procedemos a así hacerlo.

I

Con el propósito de facilitar la exposición del derecho aplicable al caso de marras, comenzamos el análisis con el señalamiento respecto al agotamiento de remedios administrativos; en específico, si dadas las circunstancias particulares del caso de autos, los demandantes estaban obligados a acudir ante la Oficina de Seguridad y Salud en el Trabajo previo a radicar su reclamación en daños, por las enfermedades ocupacionales y lesiones sufridas, ante el foro judicial. Veamos.

A

Principios generales sobre la doctrina del agotamiento de remedios administrativos-

Como es sabido, la norma del agotamiento de remedios administrativos, así como la de la jurisdicción primaria, tienen el fin común de coordinar y armonizar la labor adjudicativa de los foros administrativos y los judiciales. Ambas, de elaboración jurisprudencial, están dirigidas a promover una relación armónica entre los tribunales y las agencias encargadas de administrar disposiciones reglamentarias. Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 353 (1988); Febres v. Feijoó, 106 D.P.R. 676, 683 (1978). "En principio, la doctrina de agotar los remedios administrativos fue creada jurisprudencialmente en respuesta a las necesidades de competencia administrativa y orden en los procedimientos. La misma se apoya en la premisa fundamental de que 'nadie tiene derecho a auxilio judicial por un daño supuesto o inminente hasta haber agotado el remedio administrativo prescrito'." Mercado Vega v. U.P.R., 128 D.P.R. 273, 282 (1991).

Hemos advertido que la referida norma procura que cuando una parte desea obtener un remedio en una agencia, dicha parte tiene el deber de utilizar todas las vías administrativas a su alcance para ello antes de recurrir al foro judicial. Municipio de Caguas v. A,T & T Wireless PCS, Inc., res. el 18 de junio de 2001, 2001 TSPR 93; Colón v. Méndez, 130 D.P.R.

433 (1992). Bajo los contornos de la misma, la revisión judicial de una decisión administrativa no está disponible, de ordinario, hasta que la parte afectada no haya concluido los procedimientos correctivos ofrecidos por el proceso administrativo.[15]

Contrario a la doctrina de la jurisdicción primaria, la del agotamiento, tiene el fin y objetivo de determinar cuándo es el momento apropiado para que los tribunales intervengan en una controversia que haya sido previamente sometida ante la atención de una agencia administrativa. Municipio de Caguas v. A,T & T Wireless PCS, Inc., ante; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982). De conformidad con ello, ésta se aplica en casos en los cuales una parte, que instó o tiene pendiente alguna acción ante la consideración de una agencia o ente administrativo, recurre al foro judicial sin antes haber completado todo el trámite administrativo disponible. Id.[16] Lo que implica pues, que al amparo de la misma, se tienda a cuestionar la procedencia de una acción judicial instada por una parte, que acudió en primera instancia a un organismo administrativo, y que luego, sin antes esperar a que finalicen tales trámites o a que se le concedan los remedios administrativos correspondientes, se desvía de tal cauce

---

[15]    Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da Ed. Rev., Editorial Forum, 2001, sec.8.7, pág. 459-60; citando a Colón v. Méndez, ante.

[16]    Véase además, Igartúa de la Rosa v. Adm. Derecho al Trabajo, res. el 23 de diciembre de 1998, 98 TSPR 170; Guadalupe

recurriendo, al mismo tiempo, ante el tribunal, en busca de aquel remedio que dejó pendiente de adjudicación ante la agencia pertinente.

Claro está, para que pueda invocarse y aplicarse la doctrina sobre agotamiento, y proceda resolverse que la parte que acude al foro judicial no puede hacerlo, "es menester que exista aún alguna fase del procedimiento administrativo que la parte concernida deba agotar. Sobre todo, es evidentemente necesario que la parte peticionaria ante el foro judicial sea la misma parte que participó en el procedimiento administrativo pero que no agotó la fase de éste que estaba aún pendiente." Véase: Municipio de Caguas v. A,T & T Wireless PCS, Inc., ante. (Énfasis nuestro.)

Cabe destacar además que, con el fin de instrumentar la política de excluir la participación de los tribunales de justicia de asuntos que pueden ser resueltos administrativamente, la Asamblea Legislativa se dio a la tarea específica de adoptar e incorporar la mencionada doctrina en nuestro ordenamiento a través de la Ley de Procedimiento Administrativo Uniforme, en específico del Capítulo sobre la revisión judicial de órdenes administrativas; así, para poder solicitar la revisión judicial "la parte adversamente afectada por una orden o resolución final de una agencia tiene que agotar todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente...". Sec. 4.2 de la

---

Pérez v. Saldaña, 133 D.P.R. 42 (1993); Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991).

Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec.
2172.

Se trata pues de un requisito, que no debe ser soslayado,
a menos que se configure alguna de las limitadas excepciones
que, bajo nuestro ordenamiento, justifican preterir el cauce
administrativo y permiten la intervención del tribunal antes
de que culmine el procedimiento dispuesto en la agencia
correspondiente. Igartúa de la Rosa v. Adm. Der. Trabajo, ante.
Acorde con ello, en Vda. de Iturregui v. E.L.A., 99 D.P.R. 488,
491 (1970)[17], indicamos que se puede prescindir del requisito
de agotar el recurso administrativo en casos en que se muestre
que: a) la acción administrativa ha de causar un daño
inminente, material, sustancial...en que el balance de
conveniencias entre los daños que pueden ocasionarse y la norma
en cuestión justifican una desviación de éste; b) el recurso
administrativo constituye una gestión inútil, inefectiva y que
no ofrece proveer un remedio adecuado.[18] (Énfasis nuestro.)

De conformidad con ello, la Ley de Procedimiento
Administrativo Uniforme, dispone, en su Sección 4.3, que el
tribunal podrá relevar a un peticionario de tener que agotar
alguno o todos los remedios administrativos provistos: i) en
el caso de que dicho remedio sea inadecuado; ii) cuando el
requerir su agotamiento resultare en un daño irreparable al

---

[17]   Revocado, en otros aspectos, por Flamboyán Gardens v.
Junta Planificación, 103 D.P.R. 884 (1975).

[18]   Véase además, Demetrio Fernández Quiñones, Derecho
Administrativo y la Ley de Procedimiento Administrativo
Uniforme, ante, a la pág. 465.

promovente y en el balance de intereses no se justifica agotar dichos remedios; iii) cuando se alegue la violación sustancial de derechos constitucionales, que amerite pronta reivindicación; iv) cuando sea inútil agotar los remedios administrativos por la dilación excesiva de los procedimientos; v) cuando sea un claro caso de falta de jurisdicción de la agencia ó; vi) cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 L.P.R.A. sec. 2173.

En virtud de tal disposición estatutaria, este Tribunal ha sido enfático en advertir que el requisito de agotar los remedios ante la agencia administrativa no se puede preterir para acceder dicha jurisdicción al foro judicial, a menos que se cumplan algunas de las excepciones previamente mencionadas, las que, según indicáramos, relevan al querellante de ejercer tal requerimiento. Acevedo Ramos v. Municipio de Aguadilla, res. el 11 de abril de 2001, 2001 TSPR 52.[19]

---

[19] Cónsono con lo anterior, hemos resuelto que el invocar como excepción al agotamiento aquella referente a la violación de derechos constitucionales no margina automáticamente ni justifica de primera instancia el desvío del cauce o proceso administrativo. Acevedo Ramos v. Municipio de Aguadilla, ante; First Federal Savings v. Asoc. Condómines, 114 D.P.R. 426 (1983); Vélez Ramírez v. Romero Barceló, ante.

A tales efectos, hemos sostenido que la impugnación constitucional de actuaciones administrativas está sujeta al agotamiento de los remedios administrativos. Id. Claro está, aunque es a los tribunales a quienes compete toda interpretación constitucional, ello no implica que una simple alegación al efecto excluya el foro administrativo. First Federal Savings v. Asoc. Condómines, ante, a la pág. 438.

Así pues, hemos hecho claro que, de ordinario, aquella parte que pretenda desviarse del trámite administrativo,

De particular relevancia al caso ante nuestra consideración, hemos reconocido que cuando el foro administrativo no está facultado por ley para conceder indemnización por los daños y perjuicios sufridos y reclamados por un empleado como consecuencia de una actuación culposa, este último puede acudir directamente al foro judicial con su acción civil extracontractual. Igartúa de la Rosa v. Adm. Der. Trabajo, ante. En tales casos, se advierte que, dado el hecho de que la agencia en cuestión no provee para el resarcimiento de los daños sufridos por el promovente, sería pues absurdo e injusto requerirle a dicha parte agotar ciertos remedios que en realidad no coinciden con los que realmente pretende obtener ante el foro judicial. De tal situación, se desprende entonces lo inadecuado del remedio provisto por el organismo administrativo frente a las pretensiones del querellante.

---

alegando violación a un derecho constitucional que le sea reconocido, tiene la obligación de demostrar que el agravio al referido derecho es de tan grave y patente intensidad, que se justifica eludir el cauce administrativo. En tales casos, es necesario detectar si la acción envuelve o no un agravio de patente intensidad al derecho del individuo que reclame urgente reparación. "El tribunal deberá balancear los intereses involucrados y convencerse de que efectivamente existe una posibilidad real de prevalecer." Delgado v. Nazario de Ferrer, ante, a la pág. 357. "Para ello es menester que de la faz de lo alegado se presente una genuina controversia de derecho que justifique la intervención de los tribunales." Sólo así, procede un reclamo al amparo de tal derecho, directamente ante las autoridades judiciales. Mercado Vega v. U.P.R., ante; Guadalupe Saldaña v. Pres. U.P.R., 133 D.P.R. 42 (1993).

Véase además, Demetrio Fernández Quiñones, Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme, ante, sec. 8.8, a la pág. 479.

Hay que evaluar tal reclamo, sin embargo, teniendo en mente que la adjudicación de daños por agencias administrativas se reconoce en nuestro ordenamiento en los casos en que su estatuto orgánico lo ha dispuesto específicamente o cuando el concederlos constituye un remedio que promueve la política pública que esa agencia debe implantar.[20] Precisa destacar sin embargo, como bien señalamos en Acevedo Ramos v. Municipio, ante, que "la presentación de una reclamación en daños en los tribunales no puede ser utilizada como un subterfugio para burlar la obligación de agotar los remedios administrativos o para restarle finalidad a una determinación administrativa cuando, inmersa en la reclamación judicial, subyacen controversias que requieren ser adjudicadas inicialmente por el foro administrativo." (Énfasis nuestro.)

Con estos pronunciamientos en mente, pasamos, en primer lugar, a evaluar la naturaleza del proceso administrativo ordenado por la Oficina de Seguridad y Salud en el Trabajo, según dispuesto en su estatuto orgánico, la Ley de Seguridad y Salud, ante. En segundo término, evaluamos la facultad que ostenta dicho organismo para proveer el remedio que reclaman los peticionarios, para luego, determinar si éstos podían llevar su acción ante el foro judicial sin tener que agotar remedios administrativos ante dicha agencia.

---

[20] Demetrio Fernández Quiñones, Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme, ante, sec. 8.5, a la pág. 451; Morales González v. J.R.T., 121 D.P.R. 249 (1988); Quiñones v. San Rafael Estates, 143 D.P.R. 756 (1997).

B

Aplicación a los hechos-

Alegan los peticionarios que incidió el tribunal de instancia, y el foro apelativo al confirmar su determinación, al ordenarle que la acción reclamando indemnización por las enfermedades y lesiones sufridas, a causa del ambiente nocivo de trabajo al que estaban siendo expuestos, tenía que ser dilucidada ante la Oficina de Seguridad y Salud en el Trabajo.

En función de la clara política pública de proteger de manera primordial los derechos de los trabajadores, y del interés apremiante del Estado de que a todo empleado se le provea un lugar seguro de empleo, la Asamblea Legislativa aprobó, dentro del campo de la legislación de seguridad en el trabajo, la pieza legislativa de mayor importancia en la referida área del derecho, esto es, La Ley de Seguridad y Salud en el Trabajo.[21] Mediante la aprobación de la referida medida legislativa, se instrumentó la política plasmada en la Carta de Derechos de nuestra Constitución, a los efectos de garantizarle a cada empleado el derecho de estar protegido

---

[21]    Ley Núm. 16 de 5 de agosto de 1975, según enmendada. 29 L.P.R.A. sec. 361 *et seq.* A nivel federal, la pieza legislativa de mayor importancia en dicho campo lo es la "Occupational Safety and Health Act, 29 U.S.C.A. sec. 651.

Véase además, Lcdo. Alberto Acevedo Colom. Legislación Protectora del Trabajo Comentada. 7ma Ed. Rev., San Juan: Ramallo Printing Bros., 2001, Cap.XIII.

Lcdo. Alberto Acevedo Colom, Lcda. María Cristina Ramos Ruiz. Legislación de Seguridad Social Comentada. 1ra Ed., San Juan: Ramallo Printing Bros., 2000.

contra riesgos a su salud o persona en el lugar de trabajo o empleo.[22] Así, la propia declaración de propósitos de tal estatuto dispone, en esencia, que, con el fin de preservar nuestros recursos humanos y de proveer para el bienestar general de la clase obrera puertorriqueña, se le garantice, tanto como sea posible, a cada empleado en nuestra jurisdicción, condiciones de trabajo seguras y saludables.[23]

Mediante dicha Ley se le brindan al Secretario del Trabajo y Recursos Humanos, los mecanismos necesarios para el desarrollo y aprobación de normas de seguridad y salud, de

---

[22]    Artículo II, Sección 16, de la Constitución del Estado Libre Asociado de Puerto Rico.

[23]    El referido estatuto impone a los patronos el deber de proveer un sitio de empleo libre de riesgos reconocidos que estén causando daño a sus empleados, así como de proveer normas, reglamentos y órdenes para cumplir tal propósito. El Secretario del Trabajo pone en vigor dichas normas, siguiendo así un procedimiento de información y consulta; puede también imponer multas por violación a las mismas. Violaciones que son a su vez detectadas mediante inspecciones de los centros de trabajo, en las que el inspector encargado señala las violaciones encontradas, y avisa, a través de una citación, la intención de imponerle alguna penalidad al patrono. Penalidad que el patrono puede objetar en un procedimiento adversativo con todos los requisitos de ley. Véase secciones 6, 7, 9, 11, y 19 de la ley, respectivamente, 29 L.P.R.A. secs. 361 *et seq.*

Una violación al deber de debido cuidado impuesto por la ley, distinta de cualquier violación a una norma particular, se halla si, i) el patrono no mantuvo un centro de trabajo libre de riesgos; ii) el riesgo hallado es reconocido; iii) el riesgo probablemente cause daño físico o muerte; iv) existía un método útil y factible de corregir el riesgo.

Véase  sec. 6 (a) de la ley, proveniente de la sección 5(a) de la ley federal. OSHA Compliance Directorate, Health and Safety, United Automobile, Aerospace and Agricultural Workers Union (UAW), Departamento de Salud y Seguridad Ocupacional, Núm. 1, 1994.

reglas y reglamentos relacionados con la protección de la salud de los empleados, así como la responsabilidad y autoridad completa para poner en vigor tanto sus disposiciones como todas las normas de seguridad y salud ocupacionales, reglas, reglamentos y órdenes promulgadas bajo las mismas. 29 L.P.R.A. sec. 361a. El Secretario del Trabajo tiene, además, la facultad de adoptar cualquier norma federal establecida, o enmienda a la misma, en todo o en parte, según sea aplicable a las condiciones de trabajo en el Estado Libre Asociado, y que él determine garantizará la máxima protección a la seguridad y salud de los empleados. 29 L.P.R.A. sec. 361g (a). Será deber del Secretario, entre otros, imponer multas administrativas por violaciones a las disposiciones del estatuto en cuestión o a las normas, reglas, reglamentos y órdenes adoptadas o promulgadas a tenor del mismo. 29 L.P.R.A. sec. 361f (6).

Por otra parte, mediante la Sección 6, en cuanto a los deberes del patrono[24] se refiere, la Ley ordena a este último,

---

[24]    El término "patrono" lo define el propio estatuto como "cualquier persona, natural o jurídica y cualquier persona que represente a esa persona natural o jurídica y/o que ejerza autoridad, sobre cualquier empleo o empleado, incluyendo el Gobierno Estatal y Municipal de Puerto Rico, y cualquier departamento, agencia, instrumentalidad o dependencia de los mismos." 29 L.P.R.A 361b (c).

Todo patrono tiene, para con sus empleados, los siguientes deberes, a saber: 1) proveer un lugar seguro para trabajar; 2) proveer herramientas, equipo, o accesorios seguros en el trabajo; 3) ofrecer advertencias de cualquier peligro que los empleados pudieran desconocer; 4) proveer un número razonable de co-empleados ("suitable fellow servants"); 5) promulgar y poner en vigor normas para reglamentar la conducta de los empleados para hacer el lugar de trabajo uno seguro.

entre otros aspectos, a: i) proveer a cada uno de sus empleados un sitio de trabajo libre de riesgos reconocidos que estén causando o que puedan causar muerte o daño físico a sus empleados; ii) cumplir con las normas de seguridad y salud ocupacionales promulgadas y con  las reglas, reglamentos y órdenes emitidas de acuerdo a las mismas; iii) proveer y asegurar el uso de aparatos de seguridad, salvaguardias y el equipo de protección personal, según sea prescrito por el Secretario, o que sea razonablemente necesario, sin costo alguno para cualquier empleado. 29 L.P.R.A. sec. 361e.

En cuanto al procedimiento a seguir por el, o los empleados[25], que entiendan que su patrono ha incurrido en alguna infracción a los deberes expuestos en el párrafo anterior, la propia Ley es clara al disponer que "cualesquiera empleado(s) o representante de empleados que crea(n) que existe una violación de una norma de seguridad y salud ocupacional que puede causar daño físico, o que existe una situación de peligro según contemplada en las secciones del estatuto, puede solicitar una inspección <u>notificando</u> al Secretario o su representante autorizado de esa violación o peligro." 29 L.P.R.A. 361(p) (c)(1) (Énfasis nuestro.)

A renglón seguido, ordena que toda notificación se haga por escrito, estableciendo con razonable particularidad los

---

Véase, Charles Zeno Santiago, *Nociones sobre la Cláusula de Exclusividad del Remedio de la Ley de Compensaciones por Accidentes del Trabajo*, 26 (2) Rev. Jur. U.I.P.R. 307 (1992); Prosser S. Keeton, <u>Torts</u>, 5th Ed., (1984), sec. 80.

fundamentos para la misma, debiendo estar firmada por los empleados o su representante. La referida sección  de ley expone, además, que si al recibo de esa notificación, el Secretario determina que hay fundamentos razonables para creer que existe esa violación o peligro, llevará a cabo una inspección especial, con el fin de determinar si existe esa violación o peligro. Con el propósito de implementar tal tarea, al Secretario se le delegó específicamente el poder de llevar a cabo investigaciones, con todas las facultades que tal delegación conlleva y a tenor con las disposiciones que rigen nuestro ordenamiento administrativo, según expuestas a su vez en la Ley de Procedimiento Administrativo Uniforme.[26] En caso de que el Secretario concluya que no existen bases para creer que de hecho existen tales violaciones, notificará por escrito a los empleados o su representante de tal determinación.[27]

Por otra parte, y en lo pertinente al caso ante nos, si después de una inspección o investigación, el Secretario o su representante autorizado entiende que un patrono ha violado algún requisito impuesto por la ley o por cualquier norma, orden, regla o reglamento de salud y seguridad ocupacional, procederá entonces a emitir una citación al patrono con razonable prontitud. 29 L.P.R.A. sec. 361r(a). La citación,

---

[25]    El término "empleado" significa e incluye a todo hombre, mujer y menor empleado en cualquier sitio de empleo por un patrono. 29 L.P.R.A. sec. 361b (b).
[26]    Véase en específico la Sección 18 de la Ley de Seguridad y Salud, 29 L.P.R.A. sec. 361q.

[27]    29 L.P.R.A. sec. 361p (c)(1).

a su vez, deberá fijar un término  para la corrección de la violación en cuestión. Id.

Si luego de realizada una investigación o inspección, el Secretario emite una citación conforme lo acabado de exponer, el Secretario o su representante autorizado deberá, dentro de un término razonable, notificar al patrono por correo certificado u otro medio de entrega, de la penalidad, si alguna, que se propone imponer por la violación cometida[28], según éstas están dispuestas en la sección 25 del estatuto, 29 L.P.R.A. sec. 361x. Se advierte además que en caso de que el Secretario tenga motivos para creer que un patrono ha dejado de corregir una violación, para la cual se ha emitido una citación, dentro del periodo permitido para su corrección, éste deberá notificar al patrono de tal omisión y de la penalidad que se propone imponer por razón de ésta. 29 L.P.R.A. 361s(b).

La citada Ley provee al patrono la oportunidad de impugnar tanto la citación emitida bajo la citada sección 361r(a) como la notificación de penalidad propuesta emitida bajo las también citadas secciones 361s (a) y (b). Una vez notificado el Secretario de tal intención del patrono, el primero avisará de la misma a un examinador de la agencia para que proceda a convocar una vista pública. Tal proceso culmina pues con una orden del examinador confirmando, modificando, o revocando la citación del Secretario, o la penalidad propuesta. 29 L.P.R.A

---

[28]    Véase 29 L.P.R.A. 361s(a).

sec. 361s (c). Dicha orden se convertirá en  una final del Secretario transcurridos treinta (30) días de notificada la misma, si es que el propio Secretario no inicia una revisión de ésta; ello, a la luz de la facultad que éste último tiene de, dentro de tales treinta (30) días, iniciar *motu proprio* la revisión de la decisión del examinador. En tales casos, el Secretario podrá confirmar, modificar, o revocar las determinaciones y conclusiones del examinador a base de la evidencia previamente sometida, o a base de aquella evidencia que ordene sea recibida.

Durante esta etapa de los procedimientos, se le provee a los empleados querellantes o a su representante, la oportunidad de participación. [29] Cualquier persona adversamente afectada por una orden final del Secretario emitida al amparo del proceso antes expuesto, podrá obtener revisión de la misma en la Sala de San Juan del Tribunal Superior del Estado Libre Asociado de Puerto Rico, o en la sala del Tribunal Superior correspondiente a la jurisdicción donde la violación alegadamente ocurrió. 29 L.P.R.A. sec. 361u.

Conforme lo antes expuesto, podemos advertir que el mencionado procedimiento no cubre o envuelve las reclamaciones de los empleados querellantes en cuanto a las lesiones y

---

[29] Véase 29 L.P.R.A. sec. 361s. Procedimiento de ejecución e imposición de penalidad al patrono que se le haya emitido una citación por alguna violación, y propuesta de penalidad por omitir corregirla; solicitud de impugnación, por parte del patrono, de tal proceso y subsiguiente celebración de vista a tales efectos. "Las reglas de procedimiento prescritas por el Secretario deberán proveer a los empleados afectados o los

enfermedades sufridas, como tampoco provee para la vindicación de los derechos que alegadamente le han sido violentados.

Lo que implica pues, a todos los fines jurídicos, que al amparo de dicho estatuto, no se da ningún procedimiento que culmine con una orden o resolución administrativa que envuelva o vincule a los querellantes y que, a su vez, esté sujeta a revisión por el foro judicial. Lo que se provee es un procedimiento de impugnación, por parte del patrono, de la propuesta de penalidad que el Secretario pretenda imponerle a causa de una supuesta violación a los parámetros de seguridad y salud.

Tenemos pues ante nuestra consideración un proceso que no contempla  un caso iniciado ante una agencia que luego, bajo los mismos "standards", partes, o causas de acción, se pretenda llevar ante los tribunales. Ciertamente no existe identidad entre las partes; no se trata de una vista adversativa entre empleado contra su patrono per sé; es el Secretario, por la propia facultad y poderes que le han sido delegados, el que actúa y tramita un procedimiento administrativo contra el patrono. Cabe destacar además que no estamos ante una querella administrativa que, inmersa en una reclamación judicial, requiera ser adjudicada inicialmente por el foro administrativo.

Como previamente relatáramos, es precisamente dentro de un proceso adversativo --sujeto a las disposiciones del

---

representantes de dichos empleados afectados, la oportunidad de participar como partes en las vistas bajo este inciso."

mecanismo de la revisión judicial y expresamente al amparo del Capítulo de la L.P.A.U. que prescribe la manera en que se dilucida tal proceso-- que se origina y se aplica la doctrina del agotamiento de remedios administrativos. Así lo reafirmamos recientemente en Municipio de Caguas v. A,T & T Wireless PCS, Inc., ante, al reconocer que para que pueda aplicarse la doctrina del agotamiento de remedios es indispensable que la parte peticionaria ante el foro judicial sea la misma parte que participó en el procedimiento administrativo adjudicativo ante la agencia.

Cabe destacar pues, que de un examen de las disposiciones de la Ley de Seguridad y Salud, no se desprende facultad alguna concedida al Secretario o a la Oficina de Seguridad y Salud para conceder el remedio de indemnización por daños sufridos a una parte querellante ante sí. Por el contrario, dicho proceso se caracteriza por ser uno separado, distinto, con también distintos fines, propósitos y resultados. Ello por razón de que tal organismo, en síntesis, solo declara al patrono incurso en violación a cierta norma de seguridad y salud ocupacional, entre otras, e impone multas o penalidades por ello. Ciertamente, la procedencia de una acción en daños, que la agencia no puede adjudicar ni conceder, no requiere de la intervención o pericia por parte de la agencia concernida.

Nuestra ley actual de seguridad y salud es, prácticamente, una copia fiel y exacta de la Occupational Safety and Health Act of 1970", según enmendada, 29 U.S.C. sec. 655 et seq. (O.S.H.A.). Así pues entendemos prudente, a modo

de ilustración y persuasión, seguir la interpretación que se le ha dado a dicho estatuto en el campo laboral federal. Ello debido a que nuestra ley de seguridad y salud se promulgó en función de las disposiciones del citado estatuto federal, e incluso, ambas salvaguardan el mismo propósito, a saber: el de asegurar a cada empleado de la nación americana, condiciones de trabajos seguras y saludables. Así, también se le delegó al Secretario del Trabajo federal, la autoridad, para promulgar normas mandatorias de seguridad y salud ocupacionales en los lugares de trabajo, y, para asegurar el cumplimiento con las mismas so pena de imposición de sanciones civiles y criminales por violación a sus disposiciones.[30] Incluso, el procedimiento de citación y propuesta de penalidad contra un patrono, así como el de impugnación, dispuesto en nuestra ley, sigue el modelo prescrito por la OSHA.

De entrada debemos destacar que el Congreso de los Estados Unidos, al aprobar la referida Ley, nunca expuso, o más bien, no ordenó, para que el mismo fuera un mecanismo de desplazo o reemplazo de las diversas leyes, que sobre responsabilidad civil o compensación a obreros, hubieran aprobado los estados. Por el contrario, el Congreso expresó clara e inequívocamente

---

[30] "The declared purpose of OSHA is 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources.' To this end, Congress gave the Secretary of Labor the authority 'to set mandatory occupational safety and health standards' for the workplace and to secure compliance with those standards by imposing civil and criminal sanctions for their violation." ." Mark A. Rothstein, Lance Liebman. Employment Law, Cases and Materials, ante, p. 690.

su intención de que las disposiciones de la OSHA, no se interpretaran como derogatorias de dichos estatutos. Ello en vista de que el referido estatuto no provee para la creación de ninguna causa de acción privada a favor de los empleados afectados y en contra del patrono querellado.[31] De conformidad con ello, la Sección 4(b)(4), 29 U.S.C.A. sec. 653(b)(4), específicamente dispone como sigue:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.

A modo de ilustración, al interpretar la citada sección de ley, el Tribunal de Circuito de Apelaciones de los E.U., para el Primer Circuito, determinó en Pedraza v. Shell Oil Company, 942 F.2d 48, 52 (1st Cir. 1991), lo siguiente: "we are aware of no case which holds that OSHA preempts state tort law. Rather, most courts have been concerned with how OSHA affects tort actions, not with whether it preempts state tort law. Thus, every court faced with the issue has held that OSHA creates no private right of action." Más adelante se nos indica, citando casos adjudicados por varios tribunales de circuito que, "there is a solid consensus that section 4(b)(4)

---

[31]   Mark A. Rothstein, Lance Liebman. Employment Law, Cases and Materials, ante, p.907; véase además Jeter v. St. Regis Paper Co., 507 F.2d 973 (5th Cir. 1975); Byrd v. Fieldcrest Mills, Inc., 496 F.2d 1323 (4th Cir. 1974).

operates to save state tort rules from preemption".[32]
"Congress expressly stated that OSHA was not intended to
preempt two bases of liability that operate to regulate
workplace conduct and implicitly set safety standards—State
workers' compensation and tort law." People v. Chicago Magnet
Wire Corp., 128 Ill.Dec. 517, 523 (1989). "Sec. 4(b)(4) reveals
'Congress' explicit  recognition of the continued validity of
state worker compensation and tort remedies.[33] Tomando en
cuenta tales aseveraciones, el mencionado foro determinó que:
"the tort rules and kindred state law provisions invoked by
Pedraza are well within Connecticut's 'traditional authority
to provide tort remedies to its citizens." Pedraza v. Shell
Oil Company, ante, a la pág. 50. Por lo que el demandante tenía
derecho a que su reclamación privada en daños se mantuviera
viva y vigente ante los tribunales de justicia,
independientemente de la existencia de remedios al amparo de
la OSHA; "Connecticut statutory law preserves Pedraza's right
to sue...and seek private redress for workplace injury..caused
by the employer." Id., a la pág. 54.[34]

---

[32]    National Solid Waste Management Ass'n v. Killian, 918
F.2d 671, 680 n.9., entre otros.

[33]     The Extent of OSHA Preemption of State Hazard Reporting
Requirements, 88 Colum. Law Review 630, 641 (1988).
     Getting, away with Murder: Federal OSHA Preemption of
State Criminal Prosecutions for Industrial Accidents, 101
Harv.L.Review 535, 543 (1987).
[34]    Citando el historial legislativo del estatuto, dicho foro
apelativo indicó: "what little legislative history we have
discovered leaves even less doubt that §4 (b)(4) evinces
congressional intent to preserve state tort law from
preemption. In a letter to the Chairman of the House
Subcommittee on Labor, the Solicitor of Labor explained that

Habida cuenta de que el citado estatuto federal se ha interpretado como que salvaguarda todo tipo de causa de acción privada en daños, o más bien, no impide que la misma se adjudique, podemos razonablemente concluir que ello refuerza mas aún la posición a los efectos de que los empleados aquí querellantes no tenían remedio alguno que agotar ante la Oficina de Seguridad y Salud. Simple y sencillamente la causa de acción en daños podía originarse ante los foros judiciales sin previo trámite administrativo alguno. Al igual que la OSHA en la esfera federal, la Ley de Seguridad y Salud no regula ni reemplaza la búsqueda de remedios mediante la radicación de una reclamación extracontractual. Consecuencia directa de ello, no hay necesidad alguna de agotar remedios administrativos.

Resolvemos que la norma general sobre agotamiento de remedios, la cual requiere que los casos que se inician en el foro administrativo lleguen a su fin en la agencia antes de llegar al foro judicial, no tiene sentido ni razón de ser alguna a la luz de las circunstancias y los hechos del caso de autos. Acevedo Ramos v. Municipio, ante; Colón Ventura v. DRNA, 130 D.P.R. 433 (1992).

En mérito de lo expuesto, forzosa resulta ser la conclusión de que el Tribunal de Primera Instancia confundió

---

OSHA 'would in no way affect the present status of the law with regard to workmen's compensation legislation or private tort actions." Occupational Health and Safety Act of 1969; Hearings on H.R. 843, H.R. 3809, H.R. 4294, and H.R. 13373 before Select Subcomm. on Education and Labor, 91st Cong., 1st Sess., Pt.2, at 1592-93 (letter of L.H. Silberman, Solicitor of Labor).

los términos provistos por el estatuto en cuestión ya que el proceso ante la agencia nada tenía que ver con la vindicación de los derechos provistos a los empleados; tal vindicación de derechos le corresponde a los tribunales. Erró dicho foro al concluir que la reclamación de los demandantes debía ser desestimada por éstos no haber agotado los remedios correspondientes y al sostener que su deber era abstenerse hasta tanto concluyeran los trámites administrativos ante la Oficina de Seguridad y Salud.

II

Lo anteriormente expuesto, naturalmente, <u>no</u> dispone del caso hoy ante nuestra consideración. Ello por razón de que el hecho que hayamos determinado que los aquí demandantes no tenían que agotar los remedios administrativos, <u>necesariamente no significa que, dados los hechos particulares del caso, resulta jurídicamente procedente su acción en daños</u>.

En otras palabras, necesariamente hay que examinar la controversia planteada, esto es, la procedencia de la acción por ellos radicada, a la luz de las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo.

<u>A</u>

<u>Disposiciones generales sobre la Ley de Compensaciones por Accidentes en el Trabajo</u>

En vista de que uno de los más serios problemas económicos y sociales con los que se ha confrontado el Estado moderno es el de asegurar al trabajador empleado una compensación justa,

rápida y equitativa, cuando éste sufre daños o lesiones, a causa de un accidente o enfermedad ocupacional acaecida en el desempeño de su trabajo, la Asamblea Legislativa de Puerto Rico creó dos agencias responsables de administrar un sistema de compensaciones a obreros o empleados.[35] Así, mediante la aprobación de la Ley de Compensaciones por Accidentes en el Trabajo, Ley Núm. 45 de 18 de abril de 1935[36], según enmendada, se creó el Fondo del Seguro del Estado y la Comisión Industrial de Puerto Rico.[37]

---

[35]    Lcdo. Alberto Acevedo Colom, Lcda. María Cristina Ramos Ruiz. Legislación de Seguridad Social Comentada. 1ra Ed., San Juan: Ramallo Printing Bros., 2000, Capítulo III, pág. 127.

Nos ilustra R. Elfrén Bernier; "La aprobación de las leyes de compensaciones por accidentes en el trabajo fueron el resultado de mutuas concesiones entre los trabajadores, que ya unidos en gremios tenían alguna fuerza limitada, y los patronos que se enfrentaban a una irresistible presión de un proletariado rebelde y desesperado. Esta situación de guerra industrial fría, produjo la aceptación por los patronos del principio de responsabilidad sin culpa, con limitación de los beneficios a los empleados, a cambio de que éstos renunciaran a demandarles en daños y perjuicios..." R. Elfrén Bernier, *La constitucionalidad de dar inmunidad al patrono estatutario cuando el contratista independiente se ha asegurado a través del Fondo del Seguro del Estado*, 53 (1) Rev. Col. Abog. 53, 56 (1992).

[36]    11 L.P.R.A. sec. 1 *et seq*.

[37]    La Ley Núm. 83 de 29 de octubre de 1993, alteró la estructura del Fondo del Seguro del Estado, convirtiendo tal dependencia gubernamental en una corporación pública, denominada al momento como la Corporación del Fondo del Seguro del Estado.

"Dicha reestructuración, no obstante, no alteró las anteriores disposiciones del viejo estatuto relativas a la cubierta y operación del seguro obrero, así como los beneficios disponibles a obreros lesionados." Lcdo. Alberto Acevedo Colom, Lcda. María Cristina Ramos Ruiz. Legislación de Seguridad Social Comentada, ante, a la pág. 133.

La Ley de Compensaciones por Accidentes en el Trabajo se distingue y caracteriza por ser un estatuto de naturaleza remedial, cuyo objetivo es proveer al obrero ciertas protecciones y beneficios en el contexto de accidentes ocurridos en el escenario y/o lugar de empleo. Cátala Meléndez v. Soto Ríos, res. el 14 de abril de 1999, 99 TSPR 56. De conformidad con tal propósito, el propio estatuto establece un esquema de seguro compulsorio que tiene como fin brindar al empleado que sufre alguna lesión o enfermedad, ocurrida ésta en el curso de su trabajo y como consecuencia del mismo, un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños ante los tribunales de justicia. Pacheco Pietri v. E.L.A., 133 D.P.R. 907 (1993); Segarra Hernández v. Royal Bank, 145 D.P.R. 178 (1998). Para fines de compensación, el estatuto no hace distinción alguna entre un accidente del trabajo y una enfermedad ocupacional. Odriozola v. Superior Cosmetics, 116 D.P.R. 485 (1985).[38]

La referida Ley establece un sistema compulsorio de aportación patronal a un fondo estatal de seguro que tiene el fin de compensar a los empleados que sufran lesiones, se enfermen, se inutilicen o mueran en el desempeño de sus labores de empleo. Martínez Rodríguez v. Bristol Myers, res. el 26 de enero de 1999, 99 TSPR 6. Se trata pues de un sistema de seguro obligatorio sostenido económicamente por el patrono. Tal

---

[38] Carlos J. Irizarry Yunqué. Responsabilidad Civil Extracontractual. 3ra Ed. Rev.; San Juan: Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 1998.

obligación económica de parte del patrono de asegurarse bajo esta ley, comprende a todo aquél que utilice empleados en el transcurso de su negocio.[39] Cabe reseñar que, en cierta medida, el patrono asume el riesgo de la lesión, entendiéndose que su responsabilidad en estos casos es una absoluta.[40] Adviértase que para financiar el sistema de compensaciones, fue que se dispuso en el estatuto el carácter compulsorio del referido seguro para todos los patronos del país. Artículos 2 y 18 de la Ley de Compensaciones, 11 L.P.R.A. secs. 2 y 19.[41]

La referida disposición estatutaria ofrece beneficios de asistencia médica y medicinas, dirigidos a lograr la rehabilitación y recuperación del empleado afectado por alguna enfermedad en el transcurso de su empleo. Lcdo. Alberto Acevedo Colom. Legislación Protectora del Trabajo Comentada, ante, Capítulo XII, pág. 366. La ley provee para la concesión de varios tipos de beneficios, entre estos, de manera general, los tres siguientes: 1) tratamiento y asistencia médica,

---

[39] El Gobierno de Puerto Rico y los diversos gobiernos municipales, juntas, comisiones, autoridades, instrumentalidades, corporaciones públicas y agencias del Estado Libre Asociado se considerarán como patronos para todos los efectos de la Ley de Compensaciones.

[40] Charles Zeno Santiago, *Nociones sobre la cláusula de exclusividad del remedio de la Ley de Compensaciones por Accidentes en el Trabajo*, 26 (2) Rev. Jur. U.I.P.R. 307, 312 (1992); Vda. Andino v. A.F.F., 93 D.P.R. 170 (1966).

[41] La ley no sólo obliga a los patronos a pagar el seguro de sus empleados, sino que el patrono también es responsable subsidiariamente del pago de las primas, o impuesto, por los obreros de aquella persona que ajustó con él o los de un contratista o contratista independiente que haya contratado con él cuando éstos últimos no están asegurados. Santiago Hodge v. Parke Davis Co., 126 D.P.R. 1, 9-10 (1990).

incluso medicinas y servicios de hospital de ser ello necesario; 2) compensación, en forma de dietas, durante el período de recuperación, mientras el obrero continúe temporalmente incapacitado para trabajar, y 3) compensación adicional por cualquier incapacidad parcial o total permanente que resulte. Hurtado v. Osuna, 138 D.P.R. 801 (1995). Acorde con ello, se toman medidas para lograr la rehabilitación del trabajador y su reingreso a la fuerza laboral productiva. Alberto Acevedo Colom. Legislación Protectora del Trabajo Comentada, ante.

El empleado que desee acogerse a los beneficios provistos en el Fondo del Seguro del Estado no tiene que probar que hubo negligencia de parte del patrono como causa de la lesión o enfermedad que haya sufrido en el curso de su empleo. Tampoco opera como impedimento u obstáculo a su reclamación el que el accidente o lesión haya ocurrido como consecuencia de su propia negligencia. Pacheco Pietri v. E.L.A., ante.[42] Nótese que la referida legislación le evita al empleado tener que enfrentar las dificultades de una reclamación civil ante los tribunales, lo que implicaría tener que probar allí el elemento de culpa o negligencia por parte del patrono; "se trata de un esquema que establece una responsabilidad social objetiva que pretende evitar que los obreros queden en una situación de desamparo al tener que demostrar judicialmente la negligencia del

---

[42]     Véase A. Larson, *Larson's Workmen's Compensation Law*, New York: Matthew Bender & Co., 1964, Vol.1, sec.1.10.

patrono para poder obtener algún tipo de indemnización." Segarra Hernández v. Royal Bank, ante, a la pág. 194.

Precisamente por ello y a cambio de tal protección, el obrero empleado, que acude al Fondo en búsqueda de tratamiento y/o remedios, "renuncia" a su derecho de entablar acción alguna en daños y perjuicios contra su patrono asegurado, proveniente esta reclamación del acto negligente que ocasionó los daños sufridos. "Este *quid pro quo* es el eje central del esquema de seguro compulsorio; es lo que lo hace viable." Pacheco Pietri v. E.L.A., ante, a la pág. 916; Ruiz Díaz v. Vargas Reyes, 109 D.P.R. 761 (1980). Los trabajadores ceden en cierta medida su derecho a demandar a su patrono a cambio de un beneficio que puede eventualmente resultar menor, pero que es uno seguro, inmediato y cierto. Véase: Martínez Rodríguez v. Bristol Myers, ante. (Énfasis nuestro.)

Establecimos en Segarra Hernández v. Royal Bank, ante, a la pág. 195, que "en cuanto a la inmunidad que confiere la Ley de Compensaciones a los patronos asegurados, hemos sido enfáticos al expresar que ésta tiene carácter absoluto." La razón de ser de la inmunidad conferida por el estatuto estriba en el hecho de que el obrero recibe compensación independientemente de quién sea responsable por el accidente.

No obstante lo anteriormente expresado, se han reconocido, a modo de excepción, ciertas instancias en las que un patrono puede ser responsable ante la reclamación civil entablada por un empleado lesionado, ello a pesar de la existencia de la inmunidad. A tales efectos, tanto la propia

ley como la jurisprudencia de este Tribunal han establecido que la inmunidad patronal no es eximente cuando: 1) el daño sufrido por el obrero se debe a un acto intencional y/o discriminatorio del patrono; 2) cuando el patrono del obrero que sufre el accidente en el escenario del trabajo no está asegurado; ó 3) el patrono demandado hubiera actuado en virtud de doble capacidad o personalidad.[43] En tales casos, el patrono responderá civilmente ante los tribunales e indemnizará al empleado que haya sufrido el "accidente del trabajo".

<u>B</u>

Aplicación a los hechos-

Con estas pronunciamientos en mente, pasamos a analizar las alegaciones de la parte peticionaria ante nos.

Los peticionarios sostienen que ambos foros erraron al determinar que al patrono A.C.A.A. se le extendía la protección de la inmunidad patronal, conforme establecida en el estatuto en controversia. Alegan que la referida doctrina de la inmunidad se aplicó incorrectamente porque la evidencia de autos sostiene que los daños que han sufrido fueron causados por la negligencia crasa de los demandados en el manejo de las distintas normas de seguridad y salud ocupacionales que

---

[43] Véase, <u>Odriozola v. Superior Cosmetics</u>, ante; <u>Segarra Hernández v. Royal Bank</u>, ante; <u>Laureano Pérez v. Soto</u>, 141 D.P.R. 77 (1996); <u>Díaz Medina v. Santiago del Toro</u>, 110 D.P.R. 139 (1980); <u>Vélez Sánchez v. Comisión Industrial</u>, 107 D.P.R. 797 (1978); Artículo 15 de la Ley, 11 L.P.R.A. sec. 16, "Patronos no asegurados"; Carlos J. Irizarry Yunqué, <u>Responsabilidad Civil Extracontractual</u>, ante.

estaban obligados a implantar. Destacan, además, que, de forma negligente y culposa, éstos los sometieron a un ambiente de trabajo peligroso, insalubre, no apto para la vida humana y que tal negligencia, en cuanto al trámite y cumplimiento con los parámetros de seguridad y salud ocupacionales en el trabajo, constituía a su vez un patrón intencional de conducta. Sostienen pues que tales actuaciones excluyen su reclamación de la aplicación del remedio exclusivo de la inmunidad.

Ciertamente la A.C.A.A., en calidad de patrono de los demandantes, tiene el deber indelegable de proveer y mantener un lugar seguro de trabajo a todos los empleados adscritos a dicha dependencia. En esta jurisdicción, al igual que en la mayoría de las jurisdicciones estatales, la obligación legal de proveer un lugar seguro de empleo recae en el patrono. Rivera Santana v. Superior Packaging, 132 D.P.R. 115 (1992). Así específicamente lo ordena nuestra Constitución y la Ley de Seguridad y Salud, ante, ampliamente discutida en el acápite anterior. A esos efectos, expresamos en Rivera Santana v. Superior Packaging, ante, que el referido término "no delegable" implica la existencia de ciertas obligaciones que un patrono le debe a sus empleados, que impiden a su vez que éste pueda librarse de responsabilidad frente al obrero lesionado, delegando esa función en otros coempleados.

Debemos, pues, evaluar si el incumplimiento de tal deber, junto con una alegación de negligencia crasa a tales efectos, conlleva el resultado de obviar la inmunidad provista por la ley al patrono, aun en el caso de que los empleados reclamantes

hayan acudido y hayan sido compensados por el Fondo del Seguro del Estado.

Sabido es que un obrero lesionado, que haya sido tratado por el Fondo, carece de causa de acción para demandar a su patrono ante los tribunales de justicia por los daños y perjuicios sufridos, <u>irrespectivamente del grado de negligencia patronal que pueda haber mediado</u>. Así lo hemos establecido en más de  una ocasión. <u>Segarra Hernández v. Royal Bank</u>, ante; <u>Santiago Hodge v. Parke Davis</u>, ante; <u>Admor. F.S.E. v. Flores Hnos.</u>, 107 D.P.R. 789 (1976). Conforme ello, en <u>Pacheco Pietri v. E.L.A.</u>, ante, a la pág. 924, citando al comentarista Larson[44], nos hicimos eco de lo siguiente: "... in some of the more extreme cases of employer negligence one may understandably feel the urge to chip away at the exclusiveness barrier, but the experience of three-quarters of a century has clearly proved that, once a breach is made in that dam, to accommodate an appealing case there follows a flood of routine cases with no such appeal at all."

En <u>Vda. de Costas v. P.R. Olefins</u>, 107 D.P.R. 782 (1978), expresamos que ciertamente un patrono tiene la obligación legal de proveer condiciones seguras de trabajo a sus empleados, tal como lo ordena la Ley de Seguridad y Salud. Ello no obstante resolvimos que, y citamos, "el incumplimiento de esa obligación legal no autoriza causa de acción alguna a favor de los obreros, al amparo de la misma, aun cuando sufran

---

[44]    2A Larson's Workmen's Compensation Law, Sec. 68.15, págs. 13-58, (1988).

lesiones y tampoco afecta la inmunidad que el patrono tiene bajo el Art. 20 de la Ley de Compensaciones por Accidentes del Trabajo..". Id., a la pág. 788.[45]

Acorde con dicha trayectoria, en Hernández Sánchez v. Bermúdez & Longo, res. el 14 de octubre de 1999, 99 TSPR 156, reiteramos nuevamente dicha norma y determinamos, ante la alegación de los allí demandantes sobre negligencia crasa de parte de los demandados al no proveer un lugar seguro de empleo, que "las mismas solo podrían configurar conducta crasamente negligente que no constituye excepción a la inmunidad patronal." Id. Citando como autoridad a Vda. de Costas v. Olefins, ante, establecimos que el solo incumplimiento por un patrono asegurado de la obligación legal impuesta por la Ley de Seguridad y Salud en el Trabajo, de mantener condiciones seguras de empleo, no autoriza causa de acción a favor de los obreros...ni afecta la inmunidad patronal...por lo que el único remedio disponible es el provisto por el Fondo."

Debemos destacar y enfatizar el hecho de que, aun cuando han habido intentos de enmendar la referida Ley de Compensaciones, dirigidos éstos a ampliar su cubierta y a

---

[45] Recordemos lo reseñado en la sección anterior de la presente ponencia a los efectos de que aun ante el incumplimiento de parámetros de seguridad federales, las disposiciones de la OSHA, ante, claramente establecen que el trámite de una querella pendiente ante dicha agencia, no constituye un mecanismo para burlar la exclusividad del remedio de la inmunidad. "...OSHA was not read to create a private right of action for injured workers which would allow them to bypass the otherwise exclusive remedy of worker's compensation." Véase, nota al calce núm. 42, infra.

aumentar las compensaciones por lesiones e incapacidad, el remedio exclusivo provisto por la misma nunca ha sido objeto de enmienda. De hecho, se intentó en el año 1964 enmendar el Artículo 20 a los efectos de incluir la culpa o negligencia crasa por parte del patrono entre las excepciones a la inmunidad patronal, intento que no tuvo éxito alguno.[46] Mediante la aprobación de la Ley Núm. 111 de 6 de junio de 1967, se concretó, en cierta medida, un pequeño logro en cuanto a la concesión de remedios adicionales a los trabajadores lesionados. En virtud de la misma, se añadió una nueva sección al referido estatuto de compensaciones para conceder al obrero accidentado por causa de una violación a la Ley de Seguridad y Salud, una compensación adicional, cuya cuantía sería cobrada al patrono por el Fondo. Artículo 3b, 11 L.P.R.A. sec. 4a. La referida indemnización tiene el propósito de obligar al patrono a mantener un sitio de empleo seguro. Nótese que en ningún momento se catalogó tal sección como derogatoria de la inmunidad.[47]

_____

[46]    Véase Prudencio Rivera, vista pública en cuanto a aprobación Ley Núm. 103 de 1968: Ley Núm. 53 de 1 de junio de 1986, Leyes de Puerto Rico, pág. 189, según citadas en *Los remedios exclusivos en el despido injustificado y el accidente del trabajo: legislación protectora del patrono*, 32 (1) Rev. Jur. U.I.P.R. 89 (1997).

Véase además, P. del S. 627 del 11 de marzo de 1964, presentado por los Senadores Acevedo Colón y Marcano.

[47]    En el año 1989, cuando se creó la Comisión Revisora del Sistema de Compensación por Accidentes del Trabajo, varias agrupaciones obreras solicitaron la derogación de la inmunidad en casos de incumplimiento con los señalamientos de la Oficina de Seguridad y Salud. Se abogó, entonces, para que se sustituyera la referida compensación adicional, limitativa de

Al día de hoy, la mencionada sección lee como sigue:

> En los casos en que la lesión, enfermedad ocupacional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con esta ley, le hubiera provenido como consecuencia de violaciones a la Ley 16 de 5 de agosto de 1975, según enmendada, o de las reglas o reglamentos aprobados en virtud de las mismas, debidamente notificadas y no subsanadas dentro del tiempo prescrito por el Secretario de Recursos Humanos, el perjudicado o sus beneficiarios, en caso de muerte <u>tendrán derecho a recibir una compensación adicional equivalente a tres veces la establecida por este Capítulo</u>. (Énfasis suplido.)

Dicha compensación debe ser pagada por el Administrador del Fondo, la cual procederá a cobrársela al patrono y la misma constituirá un gravamen sobre la propiedad de éste. De manera que, siendo el propio patrono, en la eventualidad de que se halle incurso en violación a la Ley de Seguridad y Salud, quien, a fin de cuentas, sufragará la referida compensación, <u>no resulta procedente interpretar la política de prevención de riesgos como derogatoria del remedio exclusivo de la Ley de Compensaciones</u>.

Si el propósito hubiera sido excluir tal violación de la aplicabilidad de dicho remedio, y en consecuencia, de la inmunidad, no se hubiera legislado para específicamente proveerle al empleado la referida "triple compensación", y simplemente se hubiese catalogado como una de las excepciones

---

<u>la inmunidad</u>, por un seguro paralelo, equivalente al valor económico de la pérdida sufrida por el empleado, en caso de que el accidente sufrido ocurriera a causa del incumplimiento o violación de la Ley de Seguridad y Salud, a ser sufragado a base de ciertas primas cobradas a los patronos. Ello <u>nunca</u> obtuvo apoyo.

previamente discutidas. En tal caso, el empleado no sería acreedor a ningún tipo de compensación de parte del Fondo del Seguro del Estado. Simple y sencillamente, no sería una lesión compensable de acuerdo al estatuto.

Permitir al obrero reclamar por violaciones a la Ley de Seguridad y Salud, a la vez que está siendo compensado por el Fondo, brindándole así el tratamiento adecuado a causa del incumplimiento con ciertos parámetros de seguridad ocupacional, sería pues abrir la puerta a que éste pudiera recobrar dos veces por el mismo daño.[48] Por ello entendemos prudente descartar todo argumento de los peticionarios relativo al patrón intencional de conducta en cuanto al manejo de las directrices de seguridad y salud pues el remedio, ante el incumplimiento con tales normas, está debidamente contemplado por el citado artículo. En lo referente al presente caso, y aun cuando el patrono demandado haya incurrido en crasa negligencia, al no mantener un ambiente adecuado en el trabajo, ello no afecta la inmunidad que le confiere la Ley de Compensaciones.

III

En resumen, y aun cuando los demandantes no tenían que agotar remedios administrativos ante la Oficina de Seguridad y Salud, ello porque su reclamación en daños no estaba sujeta a las determinaciones de tal Oficina, no podemos obviar que

---

[48]    Véase Lcdo. Alberto Acevedo Colom, Lcda. María Cristina Ramos Ruiz. Legislación de Seguridad Social Comentada, ante;

los demandantes en el presente caso recibieron el tratamiento adecuado, fueron compensados por el Fondo en vista del hecho de que su patrono era uno asegurado. En consecuencia, y de acuerdo con las disposiciones estatutarias previamente discutidas, es de aplicación la doctrina de la inmunidad patronal en cuanto a la A.C.A.A.

La determinación en cuanto a las reclamaciones por las enfermedades sufridas de los demandantes, incluso, la compensación adicional, referente al incumplimiento de las normas de seguridad, le compete al Fondo del Seguro del Estado y no al foro judicial. Es el Fondo el ente con jurisdicción para seguir entendiendo sobre éstas.[49] Al foro judicial no le compete resolver si en efecto se violaron las normas de seguridad  y salud, pues como previamente indicáramos,  la Ley de Seguridad y Salud no crea una causa de acción independiente ante las autoridades judiciales. Este asunto debe ser dilucidado por la Oficina de Seguridad y Salud y tal determinación administrativa será la que el Fondo acogerá, o no, a los efectos de determinar si procede, o no, concederle a los demandantes la compensación adicional provista por la Ley de Compensaciones en caso de que la lesión o enfermedad sufrida sea consecuencia del incumplimiento o violación de los parámetros de salud establecidos por el Secretario del Trabajo y Recursos Humanos, determinación que podrá ser revisada ante

---

Alvarado v. Calaíño, 104 D.P.R. 127 (1975); Robles Meléndez v. Tribunal, 85 D.P.R. 665 (1962).

los tribunales. De esa manera, quedan debidamente atendidas las reclamaciones de los demandantes.

En mérito de lo anterior, procede confirmar el dictamen de ambos tribunales apelados, aun cuando por fundamentos distintos, a los efectos de que la reclamación en daños y perjuicios radicada por los demandantes ante el foro judicial no podía seguir su curso, pues el patrono demandado, esto es, la A.C.A.A., está cobijado bajo el manto de la inmunidad patronal provista por el Artículo 20 de la Ley de Compensaciones por Accidentes en el Trabajo.

IV

Atendemos, brevemente, otro aspecto del señalamiento de error esgrimido por los peticionarios.

El señalamiento referente a la responsabilidad de los supervisores y administradores en su carácter personal por no ser acreedores a la protección de la inmunidad provista al patrono ya ha sido previamente adjudicado por este Tribunal en más de una ocasión. Desde hace casi una década, en Rivera Santana v. Superior Packaging, ante, tuvimos la oportunidad de examinar la figura del tercero responsable al amparo del estatuto de compensaciones a obreros y la extensión de la inmunidad patronal provista por el mismo; allí, redefinimos el análisis a tales efectos hecho en López Rodríguez v. Delama, 102 D.P.R. 254 (1974).

_____

[49] De hecho, los demandantes seguían, a la fecha de la demanda de autos, recibiendo tratamiento por las condiciones de salud sufridas.

Al interpretar el alcance de la responsabilidad personal de coempleados que causan daño *vis* a *vis* el deber indelegable del patrono de proveer un lugar seguro de empleo a sus empleados, advertimos enfáticamente que tal obligación recae en el patrono. Definimos el término "no delegable" y señalamos que hay ciertas obligaciones que un patrono le debe a sus empleados que impiden que el patrono pueda librarse de responsabilidad frente al obrero lesionado, delegando esa función en otros coempleados. De conformidad con ello, reseñamos que, y citamos, "dentro de la estructura corporativa, el patrono descarga su obligación de proveer un lugar seguro de empleo a través de sus agentes, empleados u oficiales corporativos. De tal forma, un obrero lesionado siempre encontrará un oficial que está envuelto en decisiones en torno a la seguridad de los empleados, o a un supervisor que está encargado de implantar normas de seguridad de la compañía. Determinamos, por razones de política pública, que cuando la alegada negligencia del supervisor u oficial corporativo se deriva del incumplimiento de esta obligación, el obrero lesionado no puede demandar al coempleado; el deber de supervisión adecuada es una obligación del empleado a su patrono y no a su compañero de empleo." Rivera Santana v. Superior Packaging, ante, a la pág. 142. (Enfasis en el original.)

Acorde con lo anterior, resolvimos que mientras el empleado, supervisor u oficial demandado está descargando las responsabilidades generales de su puesto, cualquier

violación a tal deber es imputable exclusivamente al patrono, por lo que el empleado lesionado <u>sólo puede recurrir y reclamar compensación ante el Fondo del Seguro del Estado</u>. "El propósito de nuestra Ley de Compensaciones por Accidentes en el Trabajo no fue el de transferir la carga de los accidentes industriales de un empleado a otro." Id., a la pág. 143.

En fin, fundamentamos la referida conclusión en el hecho de que "permitir que los obreros lesionados demanden a los oficiales corporativos, vulneraría y trastocaría el esquema estatutario que fue diseñado para imponerle a los patronos ciertas obligaciones exclusivas siempre que los empleados sufran lesiones en el trabajo." Id.

Asimismo sostuvimos que imponerle responsabilidad a tales oficiales por accidentes que estén relacionados con una condición insegura de empleo tendría como consecuencia desalentar la aceptación, por personas capacitadas, de dichas posiciones. Concluimos además que promover la responsabilidad personal de dichas personas, tendría el resultado indeseable de que tal coempleado sería responsable por la <u>violación de un deber del patrono que ya fue compensado a través del pago de las primas al Fondo del Seguro del Estado</u>. Id.

Tal conclusión, sin embargo, no nos impidió establecer la norma, <u>vigente al día de hoy</u>, de que un oficial, agente o empleado <u>será responsable</u> por los daños sufridos por un compañero empleado <u>cuando el acto negligente causante de los mismos sea distinto e independiente del deber del patrono de proveer un lugar seguro de empleo</u>. La responsabilidad de tal

empleado está limitada a sus deberes u obligaciones personales como ciudadano de no causar daño a otras personas, conforme lo dispuesto por el Artículo 1802 del Código Civil, y no en el descargo de los deberes generales de su puesto o cargo oficial que ocupa.

Alegan los peticionarios ante nos que, aun cuando a la A.C.A.A., en calidad de patrono, le cobije la protección de la inmunidad patronal, tal defensa no le era extensiva a los codemandados, Lcdo. Práxedes Pedraza Santiago y Sr. Rafael Rivera, Director Ejecutivo de la A.C.A.A. y supervisor regional, respectivamente, por ser éstos "terceros responsables" de los daños sufridos por ellos.

Tal alegación nos conduce a los expresado por este Tribunal en Lugo Sánchez v. A.F.F., 105 D.P.R. 861 (1977), a los efectos de que cuando la lesión, enfermedad o muerte del obrero es producto de los actos de un tercero, la Ley de Compensaciones no exime de responsabilidad civil al causante de los daños, quien es ajeno a la relación obrero-patronal.[50] Así lo reafirmamos recientemente en Guzmán Acevedo v. De Jesús Rivera, res. el 16 de octubre de 2001, 2001 TSPR 135, al

---

[50] Así lo ordena el Artículo 31 de la Ley de Compensaciones, ante, 11 L.P.R.A. sec. 32, al disponer, en síntesis, que:

"[e]n los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a [un] tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y

sostener lo resuelto en López Rodríguez v. Delama, ante, a la pág. 254, y definir al tercero como "toda persona aparte del empleado lesionado y su patrono asegurado."

En el citado caso de De Jesús Rivera, ante, expresamos que un empleado lesionado tiene una causa de acción en daños y perjuicios, al amparo del Artículo 1802 de nuestro Código Civil, contra un coempleado, ya sea supervisor u oficial, como resultado de los actos negligentes y torticeros que este último cometa en su carácter personal. Más adelante, reafirmando lo resuelto en Rivera Santana, indicamos, que ésta no aplica cuando la alegada negligencia del coempleado surge en el desempeño de los deberes generales de su cargo. Guzmán Acevedo v. De Jesús Rivera, ante. "Resolver lo contrario implicaría imponerle a un coempleado la obligación de responder por la violación de un deber compensado mediante las primas al Fondo." Id.

En vista lo anteriormente expuesto, forzoso es concluir que la responsabilidad de los codemandados Pedraza Santiago y Rivera, surgió al amparo y en el descargo de los deberes de sus respectivos puestos y no al amparo del Artículo 1802. No podemos olvidar que los demandantes de autos instaron su acción en daños y perjuicios contra éstos por la negligencia desplegada por ellos en el manejo e implantación de las medidas de seguridad que, por razón de la funciones de sus respectivos puestos, estaban obligados a implantar en los lugares de empleo

---

perjuicios del tercero responsable de dicha lesión, enfermedad o muerte...".

a su cargo. Ciertamente, la controversia aquí ante nos es idéntica a aquella planteada en Rivera v. Superior Packaging, ante.

De conformidad con ello, resolvemos que ni el Lcdo. Pedraza Santiago ni el Sr. Rivera son responsables ante los empleados demandantes. Tal responsabilidad, alegadamente, surgió de la alegada negligencia de su parte en cuanto al incumplimiento con la obligación patronal de proveer un lugar seguro de empleo a los peticionarios. Véase además a Hurtado v. Osuna, ante, en donde llegamos a igual conclusión. A la luz de la norma establecida en los casos citados, somos de la opinión de que actuó correctamente el tribunal de instancia al desestimar, y el tribunal apelativo al confirmar, la reclamación de los demandantes contra los referidos dos codemandados.[51]

V

Por los fundamentos antes expuestos, procede decretar la confirmación de la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

[51]   En vista de todo lo antes expuesto, resulta ser totalmente innecesario discutir y analizar el planteamiento de los peticionarios a los efectos de que erró el tribunal de instancia y el Tribunal de Circuito de Apelaciones al resolver que ellos venían obligados a agotar los remedios contractuales establecidos en el convenio colectivo que los cubría.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Blanca Iris Guzmán Cotto
y otros

    Demandantes-peticionarios

      v.                 AC-2000-76     APELACION

Estado Libre Asociado de
Puerto Rico y otros

    Demandados-recurridos


**SENTENCIA**


San Juan, Puerto Rico, a 7 de mayo de 2002


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones.


    Así lo pronunció manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. Los Jueces Asociados señor Fuster Berlingeri y señor Corrada del Río inhibidos. El Juez Asociado señor Rivera Pérez no intervino.


                            Patricia Otón Olivieri
                      Secretaria del Tribunal Supremo