ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| KIMBERLY CLARK COMERCIAL<br><br>RECURRIDO<br><br>V.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>RECURRENTE<br><br>COMISION INDUSTRIAL DE PUERTO RICO<br><br>AGENCIA RECURRIDA | KLRA202400679 | *REVISIÓN JUDICIAL* procedente de la Comisión Industrial de Puerto Rico<br><br>Caso Núm.: 20-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-01<br><br>Sobre:<br><br>STATUS PATRONAL |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2025.

Comparece la Corporación del Fondo de Seguro del Estado (la CFSE o la recurrente) y solicita la revocación de la *Resolución* emitida el 1 de agosto de 2024, por la Comisión Industrial de Puerto Rico, (la Comisión Industrial o la agencia recurrida), notificada el 2 de agosto de 2024. Mediante la referida *Resolución*, la Comisión Industrial, declaró *Con Lugar* la *Apelación* presentada por Kimberly Clark Commercial (Kimberly Clark, o el patrono recurrido) y revocó la decisión emitida por la CFSE que declaró a Kimberly Clark patrono no asegurado.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

### I.

El 15 de enero de 2020, el Sr. Eduardo Serrano Meléndez sufrió un accidente del trabajo al descargar un vagón, mientras prestaba servicios a

Kimberly Clark.[1] El 30 de enero de 2020, la CFSE notificó a Kimberly Clark el documento *NOTIFICACIÓN DEL COBRO PRIMER AVISO* en el que se le indicó que la póliza número 35120-29965 reflejaba una deuda por la suma de $27,828.53 por concepto del año 2019-2020.[2] Kimberly Clark realizó un pago por la suma de $27,828.53 el 18 de febrero de 2020.[3]

El 5 de agosto de 2020, mediante *Decisión Del Administrador Sobre Patrono No Asegurado,* la CFSE emitió Determinación de Estatus Patronal, notificada el 7 de agosto de ese año, en la que declaró a Kimberly Clark patrono no asegurado para el 15 de enero de 2020, fecha en que ocurrió el accidente del obrero Eduardo Serrano Meléndez mientras trabajaba para Kimberly Clark.[4]

En desacuerdo, el 28 de agosto de 2020, Kimberly Clark presentó *Apelación* ante la Comisión Industrial a la que anejó notificación de cobro de primas de 22 de julio de 2019, entre otros documentos.[5] En esencia, Kimberly Clark esbozó que **la notificación de cobro de primas cursada por la CFSE el 22 de julio de 2019 es contraria a ley y reglamentación vigente, toda vez  que allí no se calculó la prima a base de la nómina pagada durante el año inmediatamente precedente** según informada por el patrono recurrente. Razonó Kimberly Clark en la *Apelación* ante la Comisión Industrial que dicha notificación de cobro de primas es nula ya que la CFSE utilizó una nómina que resulta en un 2.5% mayor a la nómina informada por el patrono. De igual forma, Kimberly Clark especificó que mediante dicha notificación de cobro de primas se le exigió un pago de $38,054.76 en o antes del 20 de agosto de 2029 y otra suma de $50,016.66 en o antes del 20 de enero de 2020 para cubrir el primer y segundo semestre del año póliza 2019-20, respectivamente. Alegó además, el patrono recurrido que en la aludida notificación de cobro de primas la CFSE

---

[1] *Véase Informe Patronal* de 7 de febrero de 2020, página 6 del Apéndice del *Recurso de Revisión.*
[2] *Véase* página 7 del Apéndice del *Recurso de Revisión.*
[3] *Véase* página 9 del Apéndice del *Recurso de Revisión.*
[4] *Véase* página 10 del Apéndice del *Recurso de Revisión.*
[5] *Véase* páginas 11-19 del Apéndice del *Recurso de Revisión.*

no incluyó un pago por la suma de $60,242.89 que se efectuó el 22 de julio de 2022, el mismo día en que Kimberly Clark radicó la Declaración de Nómina.[6] Finalmente, el patrono recurrido sostuvo que, **en la Notificación de Cobro de Primas nunca se le requirió el pago de la suma de $27,828.53 y que dicho pago se le exigió por primera vez el 30 de enero de 2020** mediante la *Notificación de Cobro Primer Aviso*, requerimiento que se hizo luego de ocurrido el accidente del trabajo el 15 de enero de 2020.[7] **A tenor con lo anterior, Kimberly Clark sostuvo en la Apelación ante la Comisión Industrial que <u>es improcedente privarlo de la protección patronal por falta de pago de una cuota que no le había sido impuesta ni notificada al momento de ocurrir el accidente</u>. En síntesis, argumentó que <u>dicha falta de notificación por parte de la CFSE le impide a la recurrente negarle protección por el accidente ocurrido el 15 de enero de 2020, en el que resultó lesionado el obrero Eduardo Serrano Meléndez</u>.**

Posteriormente, el 23 de diciembre de 2021, Kimberly Clark presentó además, ante la Comisión Industrial, *Solicitud para que se Dicte Resolución Sumariamente*[8] En síntesis, Kimberly Clark, expuso que la notificación de cobro de primas emitida por la CFSE era nula e ineficaz en derecho por haberse calculado el monto de las primas a pagar sobre una base contraria a lo dispuesto en la ley y que al ser nula dicha notificación de cobro de primas, al ocurrir el accidente del trabajo no se había recibido una notificación de cobro de primas válida en derecho. Tras la celebración de una vista el 28 de enero de 2021, la Comisión Industrial ordenó a la CFSE expresarse en tono a la *Solicitud para que se Dicte Resolución Sumariamente*, presentada por Kimberly Clark. Así las cosas, el 15 de junio de 2021, la CFSE presentó *Oposición a Solicitud de Resolución Sumaria*.[9] En esencia la CFSE expuso que conforme al Artículo 25 de Ley Núm. 45

---

[6] *Véase* páginas 16-17 del Apéndice del *Recurso de Revisión*.
[7] *Véase* página 19 del Apéndice del *Recurso de Revisión*.
[8] *Véase* páginas 20-80 del Apéndice del *Recurso de Revisión*.
[9] *Véase* páginas 83-92 del Apéndice del *Recurso de Revisión*.

de 18 de abril de 1954, 11 LPRA sec.28, el patrono viene obligado a informar, no solo la nómina pagada durante el año inmediatamente precedente, sino también los jornales calculados que serán satisfechos a dichos obreros o empleados y alegó que sobre esa suma es que se computará la cuota a pagar por el patrono.

En respuesta, el 7 de julio de 2021 Kimberly Clark presentó *Réplica a Oposición a Solicitud de Resolución Sumaria* en la que sostuvo que la disposición a la que aludía la CFSE es inaplicable, toda vez que esta aplica a pólizas eventuales y no a pólizas permanentes como las del caso.[10]

Mediante **Resolución** emitida el **21 de julio de 2021** y notificada el 5 de agosto de ese año, la Comisión Industrial declaró **No Ha Lugar la solicitud de adjudicación sumaria presentada por Kimberly Clark y ordenó la celebración de Vista Pública sobre *Status* Patronal**.[11] Posteriormente, el 11 de agosto de 2021, Kimberly Clark presentó *Moción para que se Formulen Determinaciones de Hechos Incontrovertidos y Controvertidos y Solicitud de Reconsideración.*[12] El 12 de agosto de 2021, la agencia recurrida emitió *Notificación Acogiendo Moción Para Reconsideración y Orden,* notificada el 13 de agosto de ese año, en la que la Comisión Industrial ordenó a la CFSE mostrar causa por la cual no debía revocar la *Resolución* que denegó a Kimberly Clark la solicitud de adjudicación sumaria.[13] En cumplimiento con lo ordenado, el 30 de agosto de 2021, la CFSE presentó ante la Comisión Industrial *Moción Mostrando Causa.[14]*

El **15 de noviembre de 2021**, la Comisión Industrial emitió *Resolución en Reconsideración,* notificada el 17 de noviembre de 2021 en la que denegó la solicitud de reconsideración presentada por Kimberly Clark; declaró **No Ha Lugar** su **solicitud para adjudicación sumaria** y

---

[10] *Véase* páginas 93-11 del Apéndice del *Recurso de Revisión*.
[11] Véase páginas 112-113 del Apéndice del *Recurso de Revisión*.
[12] *Véase* páginas 114-125 del Apéndice del *Recurso de Revisión*.
[13] Véase página 126 del Apéndice del *Recurso de Revisión*.
[14] *Véase* páginas 128-139 del Apéndice del *Recurso de Revisión*.

**ordenó el señalamiento de Vista Pública sobre *status* patronal.**[15] No obstante, en dicha ***Resolución en Reconsideración,*** la Comisión Industrial formuló las siguientes <u>determinaciones sobre hechos incontrovertidos</u>, así como una <u>determinación de hechos en controversia</u>:

### DETERMINACIONES DE HECHOS INCONTROVERTIDOS

1. El 22 de julio de 2019 patrono presentó a la CFSE una declaración de nómina final para el año 2019 por la cantidad de $7,134,130.36 y la nómina preliminar para el año 2020 por la cantidad de $7,312,483.62.

2. *El mismo día en la CFSE* se cumplimentó la *Notificación de Cobro de primas de Seguro Obrero.* (ver exhibit 3), realizando en la misma los cómputos correspondientes a la liquidación final del 2019 en la cual a la imposición neta preliminar anterior de $122,914.52 se le restó la prima final de $120,485.78 quedando un crédito de $2,304.01. A su vez, a la prima final se le resto el 6% del sistema de mérito por la suma de $7,229.15 quedando para dicho año una imposición neta de $113,256.63.

3. Habiendo patrono realizado el pago de la imposición neta preliminar en su totalidad, dicha suma junto al crédito obtenido de $2,304.01 da como resultado que patrono haya pagado un total de $125,218.63 cuando de la liquidación final resulta que el neto finalmente adjudicado según la nómina correspondía una póliza neta de $113,256.83. **Resultando así en un balance final de liquidación en negativo por lo cual patrono conservaba un crédito de $11,961.90 a ser adjudicado en la prima a pagar en el 2020.**

4. También en el mismo día, se realizó el cómputo para el año 2020 resultando en una prima preliminar de $123,497.92. De la evidencia se desprende que a patrono le fue adjudicado un 19% de sistema de méritos por la suma de $23,454.00, suma que junto al crédito de $11,961.90, al ser restadas a la prima preliminar resulta en una imposición neta preliminar de $88,071.42, siendo esta suma el valor de la póliza a pagar para el año fiscal 2019-2020. (ver exhibit 3)

5. En el mismo documento *Notificación de Cobro de primas de Seguro Obrero* se informa a patrono no solo el total de la prima, si no las fechas de los dos plazos de pago con la cantidad a pagar en cada uno. El primer pago sería por la suma de $36,054.76 con fecha de vencimiento 20 de agosto de 2019 y el segundo pago de $50,016.66 con fecha de vencimiento de 20 de enero de 2020.

6. El patrono el mismo 22 de julio de 202, [sic] 2019, realizó un pago por la suma de $60,242.89. Dicha suma contempla el plazo de $36,054.76 a vencer el 20 de agosto de 2019 y parte del plazo de $50,016.66 a vencer el 20 de enero de 2020, quedando un balance de $27,828.53 que debía ser pagado en o antes del 20 de enero de 2020 para mantener vigente la efectividad de la póliza.

---

[15] *Véase* páginas 141-146 del Apéndice del *Recurso de Revisión.*

7. Al pie del documento entregado a patrono se incluye la siguiente advertencia: "ESTA NOTIFICACIÓN DE PRIMA ESTÁ SUJETA A REVISIÓN, LA FALTA DE PAGO TOTAL DE LA PRIMA DENTRO DEL TÉRMINO FIJADO TENDRA EL EFECTO DE SUSPENDER LA CUBIERTA DE SU PÓLIZA. ESTA NOTIFICACIÓN DE COBRO ES APELABLE ANTE LA COMISIÓN INDUSTRIAL DENTRO DEL TÉRMINO DE 30 DÍAS CONTADOS A PARTIR DE LA FECHA DE LA MISMA. TAL REVISIÓN NO SUSPENDERÁ, EN MODO ALGUNO EL COBRO DE PRIMA NI LOS EFECTOS DE LA LEY DEL SISTEMA DE COMPENSACIÓN POR ACCIDENTES DEL TRABAJO. LA FALTA DEL PAGO TOTAL DE LA PRIMA DENTRO DEL TÉRMINO FIJADO SURTIRÁ EL EFECTO DE SUSPENDER LA CUBIERTA DE SU PÓLIZA."

8. No surge, de los documentos radicados por el patrono, que se haya apelado la *Notificación de Cobro de primas de Seguro Obrero* ante la Comisión Industrial.

9. El 15 de enero de 2020, ocurrió un accidente laboral a un empleado de patrono, el cual se determinó era uno protegido por la Ley de Compensaciones por accidentes del Trabajo, Ley Núm. 45 del 18 de abril de 1935.

10. El 20 de enero vencía el término para el segundo pago de la póliza, patrono no presentó evidencia de haber realizado dicho pago en el término mandatorio.

11. El 30 de enero de 2020, la CFSE le notificó a patrono el documento *NOTIFICACIÓN DEL COBRO PRIMER AVISO (EXHIBIT5)*. En dicho documento se indica que la póliza 35120-29965 reflejaba una deuda por la suma de $27,828.53 por concepto del año 2019-2020.

12. En dicho documento se indica lo siguiente: "*SU EMPRESA SE ENCUENTRA SIN CUBIERTA DE SEGURO OBRERO. ENVÍE CHEQUE O EVIDENCIA DE PAGO CON ESTA CART A LA MAYOR BREVEDAD POSIBLE A: FONDO DEL SEGURO DEL ESTADO CALL BOX 42006 MINILLAS STATION SANTURCE PR 00940. CARTA SOLO INCLUYE DEUDA VIGENCIA E LA PÓLIZA AÑO 2019-2020.*"

13. El mismo documento contiene unas advertencias que leen como sigue: "LA LEY DEL SISTEMA DE COMPENSACIONES POR ACCIDENTES DEL TRABAJO, ESTABLECE QUE TODO PATRONO EMPLEE UNO O MÁS OBREROS O EMPLEADOS, ESTARÁ OBLIGADO A ASEGURARSE CON LA CORPORACIÓN DEL FONDO DE SEGURO DEL ESTADO. TAMBIÉN ESTIPULA QUE MIENTRAS LA PRIMA AL AÑO SW PÓLIZA VIGENTE ESTÉ AL ESCUBIERTO, LAS DECLARACIONES DE ACCIDENTES DE TRABAJO DE SUS EMPLEADOS SERÁN DECLARADOS NO ASEGURADOS Y COMO CONSECUENCIA LOS COSTOS TOTALES DE CADA CASO EN QUE INCURRA LA CORPORACIÓN SERÁN COBRADOS EN ACCIÓN A LAS PRIMAS ADEUDADAS." Adicional el documento indica que el pago debía recibirse dentro de los siguientes 10 días laborales.

14. Patrono fue citado a comparecer sin pretexto alguno el 13 de febrero de 2020, ante la Directora del Negociado de Cobros y Embargos Lcda. Karen Grana, en relación a la **deuda de prima de seguro-vigencia de la póliza 2019-2020 por la suma de $27,828.53.** (ver exhibit 6)

15.    Patrono realizó finalmente el pago adeudado por la suma exacta cobrada por la CFSE $27,828.53.

**DETERMINACIÓN DE HECHOS CONTROVERTIDOS**

1.    Entre las alegaciones de patrono, el mismo reclama que al momento de ocurrir el accidente del trabajo este había pagado todo lo que legalmente se le había requerido y tenía un crédito de $34,853.49 (ver exhibit 7).

2.    Patrono a su vez alega que la notificación de cobro de primas se realizó a base de una cantidad de nómina que no fue informada por el patrono.

3.    En la notificación de cobro de prima de seguro obrero, no se incluyó el pago de $60,242.89, patrono alega que debía incluirse y al no hacerlo reclama que se declare nulo el documento.

4.    El 30 de enero de 2020, la CFSE le notificó a patrono el documento *NOTIFICACIÖN DEL COBRO PRIMER AVISO (EXHIBIT 5).* Patrono alega que dicha notificación fue la "primera" acción o notificación de cobro por la suma de $27,828.53 y que no se indicó que dicha suma correspondía al segundo semestre del año e la póliza.

5.    Patrono alega que en la reunión celebrada el 13 de febrero de 2020 ante la Directora del Negociado de Cobros y Embargos, se corrigió la **NOTIFICACIÓN DE COBRO DE PRIMAS notificada el 22 de julio de 2019** y se informó a patrono que la prima a pagar para el segundo semestre del año póliza era de $27,828.53."

6.    Patrono pagó dicha suma 5 días luego de la reunión indicada dado que según, no fue hasta ese momento en que se "corrigió" la suma debida en la Notificación de cobro de primas. [16]

La **Vista Pública** sobre *status* **patronal** se celebró el **27 de enero de 2022**. Allí Kimberly Clark sometió su caso con la prueba documental que acompañó con su solicitud para que se dictara resolución sumaria, y además con el *Exhibit* 7 consistente en el recibo del pago de la suma de $27,828.53 realizado el 18 de febrero de 2020.[17] Por su parte, la CFSE presentó como testigo al Sr. Félix Pérez Rivera, Asesor en Seguros.

Mediante *Resolución* emitida 1 de agosto de 2024, notificada al día siguiente, la Comisión Industrial declaró *Con Lugar* la Apelación instada por Kimberly Clark y revocó la decisión de la CFSE que declaró al patrono

---

[16] *Véase* páginas 141-143 del Apéndice del *Recurso de Revisión.*
[17] *Véase* página 9 del Apéndice del *Recurso de Revisión.*

recurrido patrono no asegurado en el caso del lesionado Eduardo Serrano Meléndez (CFSE2020-23-24135).[18] En dicha *Resolución* la Comisión Industrial formuló las siguientes determinaciones de hechos:

### DETERMINACIONES DE HECHOS

1. El 22 de julio de 2019, KCC radicó su declaración de nóminas informando como "nómina final la suma de $7,134,130.36 que para el año 2018-19 había pagado en nóminas bajo las clasificaciones de Tiendas Por Mayor (8018); Cobradores y Mensajeros (8742) y Oficinistas y Delineantes (8810). Con dicha declaración de nóminas evidenciado por un recibo de pago número 200135438. Además, como "nómina preliminar" informó un total de **$7,312,483.62** en las mismas tres clasificaciones antes mencionadas.

2. El mismo 22 de julio de 2019 el Fondo remitió al patrono una notificación de cobro de primas mediante la cual requirió el pago de $36,054.76 en o antes del 20 de agosto de 2019 para cubrir el primer semestre del año póliza 2019-2020. Además, requirió el pago de $50,016.66 en o antes del 20 de enero de 2020 para cubrir el segundo semestre de dicho año póliza, para un total de $88,071.42.

3. A pesar de que en la referida notificación de cobro de primas el Fondo liquidó el año póliza 2018-2019 a base de la "nómina final" informada por el patrono de **$7,134,130.36**, al calcular la prima preliminar para el año póliza 2019-2020 lo hizo a base de la "nómina preliminar", también informada por el patrono de **$7,312,483.62.**

4. El 15 **de enero de 2020** el lesionado, Eduardo Serrano Meléndez, sufrió un accidente del trabajo.

5. El **30 de enero de 2020** el Fondo remitió a KCC una "Notificación de Cobro de Primas Primer Aviso" requiriendo por primera vez un pago de $27,828.53 alegadamente adeudado. No se indicó que esa era la cantidad adeudada para cubrir el segundo semestre del año póliza.

6. El 10 de febrero de 2020 el Fondo citó a una reunión para concluir investigación para el 13 de febrero de 2020.

7. En la reunión celebrada el 13 de febrero de 2020 **se corrigió la notificación de cobro de primas notificada el 22 de julio de 2019** y se informó a KCC que la prima a pagar para el segundo semestre del año póliza era la suma de **$27,828.53**. Esto es, **$22,188.13 menos de lo requerido en la notificación de cobro de primas del 22 de julio de 2019,**

8. Cinco (5) días después de haber sido notificado de la cantidad a pagar para el segundo semestre, el 18 de febrero de 2020 KCC efectuó el pago de **$27, 828.53.**

---

[18] *Véase Resolución* recurrida emitida por la Comisión Industrial, páginas 188-200 del Apéndice del *Recuso de Revisión.*

9. El 7 de agosto de 2020 el Fondo notificó decisión declarando a KCC patrono no asegurado porque, alegadamente, al momento de ocurrir el accidente del trabajo el 15 de enero de 2020, "[n]o había efectuado el o los pago(s) del 2do semestre del año fiscal 2020." Dicha decisión fue debidamente apelada el 28 de agosto de 2020.

10. A preguntas del abogado del Patrono, el asesor de seguros del Fondo, Sr. Félix Pérez Rivera, reconoció que, la ley dispone:

> "El Administrador del Fondo de Seguro el estado queda por la presente autorizado y facultado para pasar e imponer a todo patrono regular y permanente de obreros y empleados afectados por este capítulo y se le ordena que tase imponga cuotas anuales determinadas cuyo arreglo a la precedente sección **sobre el importe total de los jornales pagados por dicho patrono a obreros y empleados que tenían o hubieran tenido derecho a los beneficios de este capítulo durante el año anterior a la imposición de cuotas".** …"las cuotas serán impuestas a los patronos regulares o permanentes tan pronto se reciba en la oficina del Administrador la declaración de la nómina a que se hace mención más adelante, **debiéndose tomar como base la suma total de los jornales sueldos y otras remuneraciones pagadas por el patrono a los trabajadores empleados por él durante el año anterior**.

11. Reconoció además, sobre el Reglamento para Gobernar el Seguro, del 19 de diciembre de 2019, el cual dispone:

> "En los casos de patrono regulares o permanentes el pago correspondiente al cuarto del primer semestre del año fiscal será igual al cincuenta por ciento (50%) de total de la cuota computada de acuerdo con los tipos de primas aplicados **sobre el total de la nómina pagada por el patrono a sus obreros y empleados durante el año fiscal anterior.**

12. Dicho perito reconoció a su vez, que el Artículo 27, sección 28, no dice que el Fondo del Seguro del Estado deberá radicar en el estado las nóminas que dividen lo que él entiende que le va a pagar el próximo año.

A base de las anteriores determinaciones de hecho, la Comisión Industrial resolvió que la CFSE ignoró el mandato estatutario que establece que al determinar la prima preliminar a pagar por un patrono regular o permanente en determinado año, (contrario al patrono eventual o temporero), debe estimarse la nómina a base de los salarios pagados durante el año póliza inmediatamente precedente. Concluyó la Comisión Industrial que conforme a los Artículos 23 y 25 de la *Ley de*

*Compensaciones por Accidentes del Trabajo,* Ley Núm. 45 de 18 de abril de 1935, según enmendada (Ley Núm. 45), 11 LPRA sec. 1 *et seq.*, en casos de pólizas permanentes, como lo es la póliza de Kimberly Clark, salvo el primer año en que se formaliza la póliza, en los demás años subsiguientes, **el estimado de la nómina para imponer la prima preliminar para determinado año es la nómina que el patrono pagó durante el año económico anterior, no lo que el patrono estima que pagará el próximo año**. Conforme a este razonamiento la Comisión Industrial dispuso que cuando en casos de pólizas permanentes la CFSE calcula la prima preliminar a base de una nómina preliminar, dicho cálculo es contrario a la ley y por ende nulo en derecho. Finalmente, la agencia recurrida concluyó que la notificación de cobro de primas emitida por la CFSE en el presente caso es nula toda vez que contiene un cálculo de prima preliminar para el año 2019-2020 que es contrario a la ley ya que la CFSE hizo el cálculo a base de la nómina preliminar de $7,312,483.62 que no es la nómina pagada por Kimberly Clark durante el año precedente 2018-2019. Así, concluyó la agencia recurrida que la CFSE debió calcular la prima preliminar a base de la nómina pagada por el patrono durante el año inmediatamente precedente, que en este caso era $7,134,130.36 por lo que declaró la nulidad la Notificación de Cobro de Primas emitida por la CFSE el 22 de julio de 2019. En consecuencia, concluyó igualmente la Comisión Industrial que ante la nulidad de la notificación del cobro de primas emitida el 22 de julio de 2019, procedía extenderle cubierta al patrono recurrido ya que a la fecha del accidente del obrero lesionado el patrono no había recibido una notificación de cobro de primas válidas en derecho.

En lo pertinente a su jurisdicción para atender la Apelación, la Comisión Industrial concluyó que siendo nula la notificación de cobro de primas esta nunca existió, por lo que era innecesario instar una Apelación dentro del término estatutario para invocar su nulidad. Finalmente, la Comisión Industrial resolvió que Kimberly Clark es un patrono asegurado y

ordenó a la CFSE a brindarle al patrono recurrido la íntegra protección de la ley.

En desacuerdo, el 21 de agosto de 2024, la CFSE presentó *Moción de Reconsideración.*[19] Mediante *Resolución en Reconsideración* notificada el 14 de noviembre de 2024, la Comisión Industrial declaró *No Ha Lugar* la *Moción de Reconsideración* presentada por la CFSE el 21 de agosto de 2024.[20]

Inconforme, la CFSE recurre ante nos mediante el recurso de epígrafe y señala la comisión de los siguientes errores por parte de la Comisión Industrial:

1. ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL PERMITIR UN ATAQUE COLATERAL A UNA DECISIÓN FINAL SOBRE COBRO DE PRIMAS CONTRA LA CUAL NO SE HABÍA PRESENTADO RECURSO ALGUNO. LA COMISIÓN INDUSTRIAL CARECÍA DE JURISDICCIÓN PARA ENTENDER EN LOS MÉRITOS DE LA NOTIFICACIÓN DE COBRO DE PRIMAS DE 22 DE JULIO DE 2019.

2. ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL DETERMINAR QUE LA NOTIFICACIÓN DE COBRO DE PRIMAS DEL 22 DE JULIO DE 2019 ERA NULA. DICHA DETERMINACIÓN ES CONTRARIA A DERECHO. VÉASE REGLA 304 (31) DE LAS REGLAS DE EVIDENCIA DE 2009. VÉASE ADEMÁS CAMACHO V. AAFET 168 DPR 66(2006). LAS DETERMINACIONES DE LOS ORGANISMOS ADMINISTRATIVOS GOZAN DE PRESUNCIÓN DE REGULARIDAD Y CORRECCIÓN QUE DEBE SER RESPETADA A MENOS QUE QUIEN LA IMPUGNE PRODUZCA SUFICIENTE EVIDENCIA PARA DERROTARLA. LA LEY 45-1935 FACULTA AL ADMINISTRADOR A TASAR E IMPONER LAS CUOTAS DEL SEGURO OBRERO SOBRE LOS JORNALES PAGADOS A EMPELADOS QUE TENÍAN O HUBIEREN TENIDO DERECHO A LAS PROTECCIONES DE ESTA LEY Y LA LEY PROVEE PARA QUE DICHAS DETERMINACIONES SEAN REVISADAS ANTE LA COMISIÓN INDUSTRIAL.

3. ERRÓ LA HONORABLE COMISIÓN INDUSTRIAL AL INCLUIR COMO DETERMINACIONES DE HECHOS ALEGACIONES DEL PATRONO QUE NO SE SUSTENTAN CON EVIDENCIA, EN LAS DETERMINACIONES 5, 6 Y 7. SON MERAS ALEGACIONES DEL ABOGADO DEL PATRONO QUE NO CONSTITUYEN PRUEBA. VÉASE PEREIRA SUÁREZ V JUNTA DE DIRECTORES 182 DPR

---

[19] *Véase* páginas 201-215 del Apéndice del *Recurso de Revisión.*
[20] *Véase* páginas 362-365 del Apéndice del *Recurso de Revisión.*

485 (2011); <u>ASOCIACIÓN AUTÉNTICA EMPLEADOS V. MUNICIPIO DE BAYAMÓN</u> 111 DPR 527, 531 (1981), DONDE NUESTRO TRIBUNAL SUPREMO EXPRESÓ QUE MERAS ALEGACIONES NO CONSTITUYEN PRUEBA. <u>PUEBLO V. MELÉNDEZ</u>, 148 DPR 539 (1999) ¨ES PRINCIPIO RECTOR QUE MERAS ALEGACIONES Y TEORÍAS, COMO TAMPOCO ARGUMENTOS FORENSES, CONSTITUYEN PRUEBA¨.

Por su parte, Kimberly Clark comparece ante nos mediante *Alegato en Oposición a la Solicitud de Revisión presentada por la Corporación del Fondo de Seguro del Estado.* En esencia, el patrono recurrido sostiene que toda vez que la notificación de cobro de primas emitida el 22 de julio de 2019 es nula e ineficaz, la declaración de nulidad en este caso podía solicitarse en un pleito separado como lo es la *Apelación* de la decisión de patrono no asegurado presentada por Kimberly Clark ante la Comisión Industrial, por lo que no incidió la agencia recurrida al acreditar su jurisdicción para atender su Apelación. En lo pertinente al segundo señalamiento de error de la CFSE, señala Kimberly Clark  que de los Artículos 23 y 25 de la Núm. 45, *supra*, surge claramente que la base para calcular las primas preliminares de pólizas permanentes son los salarios pagados durante el año económico anterior y que en casos de pólizas permanentes como la del presente caso, al calcular la  prima preliminar para determinado año  debe estimarse  a base de la nómina que el patrono pagó durante el año económico anterior y no a base de lo que se estima que el patrono pagará  el próximo año. Finalmente, sostiene Kimberly Clark que contrario a lo alegado por la CFSE, las Determinaciones de Hecho 5, 6 y 7 de la Resolución recurrida están sustentadas con toda la prueba documental sometida por el patrono recurrente, primero como anejo a la *Solicitud para que se Dicte Resolución Sumaria* y luego como Anejo a su Apelación. Sobre estos extremos, destaca Kimberly Clark que las Determinaciones de Hecho 5, 6 y 7 surgen de dichos documentos los cuales son precisamente documentos emitidos por la CFSE y que consisten de la Notificación de Cobro Primer Aviso fechada 30 de enero de 2020, en la se le notifica por primera vez una alegada deuda de $27,828.53

y el documento sobre la citación expedida por la CFSE el 10 de febrero de 2020, para celebrar una reunión el 13 de febrero de 2020 para concluir la investigación.

**II.**

-A-

La revisión judicial de las decisiones administrativas tiene como fin garantizar que los ciudadanos tengan un foro al cual acudir para vindicar sus derechos y para obtener un remedio frente a posibles actuaciones arbitrarias. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 435 (1997); *Hernández Denton v. Quiñones Desdier*, 102 DPR 218, 223-224 (1974). Este proceso "forma parte de un trámite apelativo cuyo diseño responde al principio constitucional de mayor acceso a los tribunales". *Ríos Martínez, Com. Alt. PNP v. CLE*, 196 DPR 289, 302 (2016) citando a *Méndez v. Corp. Quintas San Luis*, 127 DPR 635, 637 (1991).

La Ley Núm. 38 de 30 de junio de 2017, según enmendada y mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), 3 LPRA sec. 9601 *et seq.*, dispone el alcance de la revisión judicial de las determinaciones de las agencias. Sec. 4.5 de la LPAU, *supra*. Tanto la referida Ley como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC v. Caguas Centrum,* 148 DPR 70, 80 (1999).

Ahora bien, "es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos debemos conceder deferencia a las decisiones de las agencias administrativas". *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016). Esto se debe "a la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado". *Íd.* (Escolio omitido). Es sabido que las determinaciones de una

agencia administrativa gozan de una presunción de corrección. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019).

> [L]os foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 591 (2020). *(Cita omitida).*

A tenor con lo anterior, los tribunales deben deferencia a las agencias administrativas salvo que: (1) las determinaciones no estén basadas en evidencia sustancial; (2) las conclusiones de derecho fueran incorrectas; (3) la agencia actuara de forma arbitraria, irrazonable o ilegal; o (4) que lesionara derechos fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021)*; Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). En ausencia de ello, "aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Super Asphalt v. AFI y otro, supra; ECP Incorporated v. OCS,* 205 DPR 268, 281-282 (2020).

Por consiguiente, la deferencia cede, por ejemplo, cuando la agencia no se fundamenta en evidencia sustancial. "A esos fines, evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Capó Cruz v. Jta. de Planificación et al., supra.*

> Es decir, como excepción los tribunales pueden intervenir con las determinaciones de hechos de una agencia *cuando no están sustentadas por el expediente*, ya que el foro judicial no debe sustituir su criterio por el del foro administrativo si hizo una interpretación razonable de los hechos. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1027 (2020). (Citas y comillas omitidas). (Énfasis suplido).

"Por su parte, las determinaciones de derecho pueden ser revisadas en su totalidad". *Capó Cruz v. Jta. de Planificación et al., supra.*

**-B-**

La Carta de Derechos de nuestra Constitución establece que todo trabajador tiene el derecho de estar protegido contra riesgos a su salud en su trabajo o empleo. Art. II, Sec. 16, Const. PR, LPRA, Tomo 1. Por ello, y reconociendo el principio de que el riesgo de sufrir accidentes del trabajo

es uno de tipo fundamental que necesariamente requiere acción gubernamental, la Asamblea Legislativa por virtud de la Ley Núm. 45 del 18 de abril de 1954, mejor conocida como la *Ley del Sistema de Compensaciones por Accidentes del Trabajo,* según enmendada, 11 LPRA Sec. 1, *et seq.*, (Ley Núm. 45), creó la Corporación del Fondo del Seguro del Estado (CFSE). A través de esta entidad, se "provee en favor de los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos, un remedio económico y médico para compensar la incapacidad productiva que sobreviene como consecuencia de un accidente o enfermedad ocupacional". *Saldaña Torres. v. Mun. San Juan*, 198 DPR 934 (2017); Artículo 2 de la Ley Núm. 45, 11 LPRA Sec. 2. Así pues, un obrero o empleado que sufra una lesión o enfermedad ocupacional tendrá derecho a: asistencia médica, incapacidad transitoria, incapacidad parcial permanente, incapacidad total permanente, o compensación en caso de muerte. 11 LPRA sec. 3.

El carácter remedial de la Ley Núm. 45, *supra*, tiene como política pública y norma general que el patrono posea inmunidad contra acciones de daños y perjuicios por accidentes laborales, siempre y cuando sea uno asegurado, o sea que haya cumplido con sus disposiciones**.** *Marrero Cancel v. Caribbean Hosp. Corp.*, *et al*, 156 DPR 327, 332 (2002). Así, el Art. 16 de la Ley Núm. 45, 11 LPRA Sec. 19, dispone en lo pertinente que "[t]odo patrono de los comprendidos dentro de las disposiciones de esta Ley estará obligado a asegurar a sus obreros o empleados en la Corporación del Fondo del Seguro del Estado la compensación que éstos deban recibir por lesiones, enfermedad o muerte […]". Por ello, será deber de todo patrono el presentar al Administrador, no más tarde del 20 de julio de cada año, un estado que detalle el número de trabajadores que emplea, la clase de ocupación o industria de estos y la cantidad total de jornales pagados a los mismos durante el año económico anterior. Sobre tal declaración, se computará la cuota a ser pagada por el patrono, cuyo pago

deberá acompañarle. Artículo 23 de la Ley Núm. 45, 11 LPRA Sec. 26; *Martínez v. Bristol Myers, Inc.*, 147 DPR 383, 393 (1999). La Ley Núm. 45, así como su jurisprudencia interpretativa, disponen que aquel patrono que no cumpla con esta obligación será considerado como un patrono no asegurado.

Conforme al esquema de la CFSE, el patrono asume el riesgo de la lesión, entendiéndose que su responsabilidad es absoluta y el empleado que se acoge a la CFSE por un accidente del trabajo no tendrá que probar que hubo negligencia de parte del patrono como causa de la lesión o enfermedad, por lo que es inmaterial que el accidente haya ocurrido a consecuencia de la negligencia del patrono, de un tercero, o hasta del propio empleado*. Guzmán y otros v. E.L.A.,*156 DPR 693 *(*2002*)*. Es decir, el empleado recibe compensación independientemente de quién sea responsable por el accidente. La legislación evita que el empleado tenga que enfrentar las dificultades de una reclamación civil ante los tribunales, donde tendría que probar el elemento de culpa o negligencia. *Id.* A cambio de esta protección, el patrono asegurado recibe inmunidad contra cualquier reclamación civil en daños y perjuicios que pueda entablar el empleado lesionado en su contra. *Id. González v. Multiventas*, supra, págs. 881-882.

La jurisprudencia del Tribunal Supremo de Puerto Rico que enfatiza en el carácter absoluto de la inmunidad patronal y es el remedio provisto por el Fondo el único remedio disponible para el empleado lesionado. *Guzmán y otros v. E.L.A.,* supra; *Hernández Sánchez v. Bermúdez & Longo, S.E.*, 149 D.P.R. 543 (1999); *Admor, FSE v. Flores Hnos. Cement Prods., Inc.*, 107 D.P.R. 789 (1978). Por excepción, la inmunidad patronal no aplica en aquellas situaciones en las que el daño sufrido por el obrero se deba a un acto intencional o discriminatorio de parte del patrono. Ante este tipo de actuación del patrono, se le reconoce al empleado afectado una causa de acción para reclamarle civilmente a su patrono. (Citas omitidas). *González v. Multiventas*, supra, págs. 882-883.

El Art. 16 de la Ley Núm. 45 *supra*, dispone que, todo patrono de los comprendidos dentro de las disposiciones de la Ley de Compensaciones estará obligado a asegurar a sus empleados en la CFSE la compensación que estos deban recibir por lesiones, enfermedad o muerte. Cuando el patrono asegure a sus obreros y empleados de acuerdo con la ley, el derecho estatutariamente establecido para obtener compensación será el único remedio en contra del patrono y por ende gozará de inmunidad patronal.11 LPRA sec. 21. Cualquier accidente que ocurra antes de verificarse el pago, será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador. Mientras no se haya hecho este pago por el patrono, dicho patrono no tendrá derecho a las inmunidades provistas por la Ley con respecto a las lesiones, enfermedades o muertes que pudieren ocurrir a los obreros o empleados de tal patrono durante el período que cubre el pago de dichas primas. *Id.*

Además, en el caso de que ocurriere un accidente a un obrero o empleado cuando trabajare para un patrono que en violación de la ley no estuviere asegurado, el Administrador del Fondo determinará la compensación que proceda más los gastos en el caso y cobrará al patrono dicha compensación y gastos para ser ingresados en el Fondo. Art. 13 de la Ley Núm. 45 *supra*.

Al respecto, en *Atlantic Pipe Corp. v. F.S.E.*, 132 DPR 1026, 1029 (1993), el Tribunal Supremo expresó que "el seguro gubernamental por accidente ocupacional comienza a regir después que se archive o reciba en el Fondo la "nómina o estado acompañado del importe de la cuota" correspondiente y, además, la ley requiere que antes de que el seguro entre en vigor, el patrono tiene que verificar el pago "dentro del término fijado por el Administrador del Fondo del Seguro del Estado". Así, explicó que, según la Ley Núm. 45-1935, hasta tanto no se efectúe el pago dentro de los términos fijados por el Administrador, el patrono no tendrá derecho

a las inmunidades provistas por la ley". Íd; *Montaner v. Comisión Industrial*, 59 DPR 396, 400 (1941).

Cuando el patrono efectúa el pago correspondiente después de la fecha fijada por el Administrador, este debe considerar al patrono como asegurado desde la fecha en que se recibió. *Atlantic Pipe Corp. v. F.S.E., supra,* pág. 1029. Es decir, dicho pago no tiene efecto retroactivo, pues fue verificado después de vencido el plazo concedido por el Administrador. Íd. Lo anterior significa que, "[e]l Administrador está impedido de darle efectividad a una póliza, cuando el patrono no ha acreditado la realización de su pago". *González v. F.S.E,* 140 DPR 123, 127-128 (1996). **Así, la verificación del pago, aunque éste sea tardío, protege al patrono contra los accidentes ocurridos con posterioridad al mismo, <u>más no así, contra aquellos accidentes acaecidos con anterioridad al pago.</u>** *Íd.* (Énfasis suplido).

En lo pertinente al caso que nos ocupa, el **Artículo 25** de la aludida Ley Núm. 45, *supra*, establece lo siguiente:

> Será deber de todo patrono el presentar al Administrador, no más tarde del 20 de julio de cada año, un estado expresando el número de trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y **la cantidad total de jornales pagados a tales trabajadores o industrias durante el año económico anterior;** Disponiéndose, que a solicitud del patrono y por causa justificada, el Administrador podrá extender dicho término por un período no mayor de quince (15) días. **Sobre la suma total de jornales declarados en ese estado será computada la cuota dispuesta en las secs. 26 y 27 de este título. Disponiéndose, que todo patrono que empleare trabajadores de los comprendidos en este capítulo por cualquier término o parte de un semestre, deberá presentar el estado antes mencionado, consignando el número de obreros o empleados ocupados, la clase de ocupación y <u>los jornales calculados que serán satisfechos a dichos obreros o empleados</u> y sobre esa suma se computará la cuota a pagar por el patrono, debiendo al terminar el trabajo de estos obreros o empleados, presentar el patrono, un estado igual al anterior con el importe total de los jornales pagados,** sobre cuya suma se hará ;a liquidación correspondiente, y siesta nómina es mayor que la anterior, el Administrador tasará, impondrá y recaudará tal y como se dispone en este capítulo, sobre la diferencia, cuotas adicionales en forma igual a la que anteriormente dispone. (Énfasis suplido)
>
> 11 LPRA sec. 28

De otra parte, el **Artículo 23** de la Ley Núm. 45, *supra*, dispone en lo pertinente a la formalización de las pólizas eventuales, lo siguiente:

El Administrador del Fondo de Seguro del Estado queda por la presente autorizado y facultado para tasar e imponer a todo **patrono regular o permanente** de obreros y empleados afectados por este capítulo, y se le ordena que tase e imponga cuotas anuales determinadas con arreglo a la sec. 25 de este título ***sobre el importe de los jornales pagados por dicho patrono a obreros y empleados que tenían o hubieren tenido derecho a los beneficios de este capítulo durante el año anterior a la imposición de las cuotas.***

Asimismo, queda autorizado y facultado el Administrador para tasar e imponer a todo patrono eventual o temporero, cuotas por el término o tiempo que duren sus operaciones, las cuales serán satisfechas al formalizarse las correspondientes pólizas y divididas en semestres de años fiscales según se estime el período durante el cual se habrán de invertir los jornales y sueldos a ser pagados. (Énfasis suplido)

11 LPRA sec. 26

Cónsono con este mandato legislativo, el *Reglamento para Gobernar el Seguro*, Reglamento Núm. 8986 de 19 de diciembre de 2019 (Reglamento Núm. 8986), en sus **Disposiciones Generales** Regla VI inciso J (1) dispone expresamente lo siguiente:

J. **PAGO DE PRIMAS**

1. **Pólizas Permanentes**-En los casos de **patronos regulares o permanentes** el pago correspondiente al cuarto del primer semestre del año fiscal será igual al cincuenta porciento (50%) del total de la cuota computada de acuerdo con los tipos de primas aplicados **sobre el total de la nómina pagada por el patrono a sus obreros y empleados durante el año fiscal anterior** ajustado por la liquidación final del año anterior.

En cuanto a la liquidación de las pólizas eventuales, la Regla VI (F)(2) del Reglamento Núm. 8986, *supra*,

F. **LIQUIDACIÓN Y CANCELACIÓN DE PÓLIZAS**

**2. Al finalizar los trabajos cubiertos por una póliza eventual o temporera, el Administrador comparará la nómina informada por el patrono eventual o temporero, con la nómina estimada al formalizar la póliza y que se tomó como base para el cálculo de la prima tasada y cobrada correspondiente al término de duración de los trabajos.** Si la nómina, según fuera revisada resultara mayor que la que sirvió de base para para la imposición de la prima, el Administrador tasará, impondrá y cobrará primas adicionales en la misma forma y sobre la misma base usada para la tasación y recaudación de las primas originales. Si la nómina fuera menor que la que sirvió de base para tasar, imponer y cobrar las primas, el Administrador reembolsará o acreditará, sin intereses, al patrono la proporción de las primas correspondientes a la diferencia entre la nómina actual y aquella que sirvió de base para tasar, imponer y cobrar las primas originales, siempre y cuando el administrador pueda comprobar a su entera satisfacción que los jornales, sueldos y otras remuneraciones declaradas por el patrono o consignadas en sus libros son correctos y corresponden con la nómina verdadera del patrono.

Es importante mencionar que el Artículo 9 de la Ley Núm. 45, *supra*, establece que "[e]n los casos de patronos no asegurados, tanto el obrero como el patrono podrán acudir a la Comisión Industrial una vez el Administrador haya declarado al patrono como uno no asegurado, teniendo dicho patrono un término de treinta (30) días para apelar la decisión del Administrador". Asimismo, la Regla 26 de las Reglas de Procedimiento de la Comisión Industrial de Puerto Rico, Reglamento Núm. 7361, Departamento de Estado, 21 de mayo de 2007, pág. 37 (Reglamento Núm. 7361) dispone que los asuntos sometidos ante su consideración se resolverán mediante orden o resolución. Según la Regla 28 del aludido Reglamento las resoluciones contendrán un aviso que advertirá del derecho de solicitar reconsideración y posterior revisión judicial, expresando los términos establecidos para ello. Además, dispone que en las resoluciones interlocutorias no es necesario incluir dichas advertencias. Íd.

En cuanto a la revisión judicial, la Regla 29 del Reglamento Núm. 7361 establece, entre otras cosas, que la parte adversamente afectada por una resolución de la Comisión Industrial podrá solicitar reconsideración y si la agencia toma una determinación en reconsideración, el término para solicitar reconsideración judicial comenzará a contar desde la fecha en que notifique la resolución de la Comisión resolviendo la moción de reconsideración. Íd. En cuanto al término para acudir ante nos, la Regla 30 del Reglamento Núm. 7361 establece que una parte adversamente afectada por una resolución en reconsideración podrá solicitar revisión judicial en el término de treinta (30) días, contados a partir de la notificación de la resolución en reconsideración.

**III.**

Es la contención de la CFSE en su primer señalamiento de error que incidió la agencia recurrida al declararse con jurisdicción para atender la *Apelación* presentada por Kimberly Clark. Razona la CFSE que toda vez que el patrono recurrido nunca apeló la Notificación de Cobro de 22 de julio

de 2019, la Comisión Industrial carecía de jurisdicción para atender su reclamo. Sostiene además, la CFSE como error incurrido por la Comisión Industrial que incidió la agencia recurrida al concluir que la notificación de cobro de primas de 22 de julio de 2019 es nula. Finalmente, arguye la CFSE que las determinaciones de hechos núm. 5.6 y 7 de la *Resolución* recurrida no están sostenidas por la prueba y que consisten en alegaciones del abogado del patrono recurrido.

Conforme a los Artículos 23 y 25 de la Ley Núm. 45, *supra*, en casos de pólizas permanentes, como lo es la póliza de Kimberly Clark en el presente caso, salvo el primer año en que se formaliza la póliza, en los demás años subsiguientes, **el estimado de la nómina para imponer la prima preliminar para determinado año es la nómina que el patrono pagó durante el año económico anterior, no lo que el patrono estima que pagará el próximo año**. Cuando en casos de pólizas permanentes la CFSE calcula la prima preliminar a base de una nómina preliminar, dicho cálculo es contrario a la ley y por ende nulo en derecho. La notificación de cobro de primas emitida por la CFSE en el presente caso es nula toda vez que contiene un cálculo de prima preliminar para el año 2019-2020 que es contrario a la ley ya que la CFSE hizo el cálculo a base de la nómina preliminar de $7,312,483.62 que no es la nómina pagada por Kimberly Clark durante el año precedente 2018-2019. La CFSE debió calcular la prima preliminar a base de la nómina pagada por el patrono durante el año inmediatamente precedente, que en este caso era $7,134,130.36 por lo que no incidió la Comisión Industrial al declarar la nulidad la Notificación de Cobro de Primas emitida por la CFSE el 22 de julio de 2019. Ante la nulidad de la notificación del cobro de primas emitida el 22 de julio de 2019, procedía extenderle cubierta al patrono recurrido ya que a la fecha del accidente del obrero lesionado el patrono no había recibido una notificación de cobro de primas válidas en derecho.

Toda vez que la notificación de cobro de primas emitida el 22 de julio de 2019 es nula e ineficaz, la declaración de nulidad en este caso podía

solicitarse en un pleito separado como lo es la *Apelación* de la decisión de patrono no asegurado presentada por Kimberly Clark ante la Comisión Industrial, por lo que no incidió la agencia recurrida al acreditar su jurisdicción para atender su Apelación. Además, es preciso destacar que la Ley Núm. 45, supra, no establece expresamente un término para apelar las facturas de cobro. Concluimos, que la nulidad de la *Notificación de Cobro* de 22 de julio de 2019, es precisamente el fundamento para revocar Decisión de la CFSE que declaró a Kimberly Clark patrono no asegurado, por lo que la Comisión Industrial actuó dentro de su ámbito jurisdiccional para atender la *Apelación* presentada oportunamente por el patrono recurrente

En el caso que nos ocupa, **la notificación de cobro de primas cursada por la CFSE el 22 de julio de 2019 es contraria a ley y reglamentación vigente, ya que allí no se calculó la prima a base de la nómina pagada durante el año inmediatamente precedente conforme a lo dispuesto en el Artículo 23 de la Ley Núm. 45,** *supra***.** Es improcedente privar a Kimberly Clark de la protección patronal por falta de pago de una cuota que no le había sido impuesta ni notificada al momento de ocurrir el accidente. Dicha falta de notificación por parte de la CFSE le impide a la recurrente negarle protección al patrono recurrido por el accidente ocurrido el 15 de enero de 2020, en el que resultó lesionado el obrero Eduardo Serrano Meléndez**.**

En lo pertinente a las determinaciones de hechos núm. 5,6 y 7 de la *Resolución* recurrida, a las que alude la CFSE en su tercer señalamiento de error, estas disponen lo siguiente:

5. El **30 de enero de 2020** el Fondo remitió a KCC una "Notificación de Cobro de Primas Primer Aviso" requiriendo por primera vez un pago de $27,828.53 alegadamente adeudado. No se indicó que esa era la cantidad adeudada para cubrir el segundo semestre del año póliza

6. 10 de febrero de 2020 el Fondo citó a una reunión para concluir investigación para el 13 de febrero de 2020.

**7.** En la reunión celebrada el 13 de febrero de 2020 **se corrigió la notificación de cobro de primas notificada el 22 de julio de 2019** y se informó a KCC que la prima a pagar para el segundo semestre del año póliza era la suma de **$27,828.53**. Esto es, **$22,188.13 menos de lo requerido en la notificación de cobro de primas del 22 de julio de 2019,**

Es preciso destacar que estas determinaciones de hechos están sostenidas por la prueba documental incontrovertida presentada por el patrono recurrido la cual consiste precisamente en documentos emitidos por la propia CFSE y por otros documentos que obran el expediente. Precisamente, la **Vista Pública** sobre *status* **patronal** se celebró el **27 de enero de 2022**. Allí Kimberly Clark sometió su caso con la prueba documental que acompañó con su solicitud para que se dictara resolución sumaria que incluye la *Notificación de Cobro de Primas Primer Aviso*" requiriendo por primera vez un pago de $27,828.53 alegadamente adeudado, cursada al patrono recurrido el 30 de enero de 2020. La *Citación para Concluir Investigación* expedida por la CFSE el 10 de febrero de 2020 obra también en el expediente.[21] Además, Kimberly Clark presentó como prueba documental **el recibo del pago de la suma de $27,828.53 realizado posteriormente el 18 de febrero de 2020,** *Exhibit* **7**.[22]

Conforme a los anteriores señalamientos, concluimos que la Resolución recurrida emitida por la Comisión Industrial está sostenida por la totalidad de la prueba que obra en el expediente, por lo que la agencia recurrida tampoco incurrió en el tercer señalamiento de error levantado por la CFSE en el caso de epígrafe.

**IV.**

Por los fundamentos anteriormente expresados, los cuales hacemos formar parte de esta Sentencia, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] *Véase* páginas 7-9 del Apéndice del *Recurso de Revisión.*
[22] *Véase* página 9 del Apéndice del *Recurso de Revisión.*